**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANTOINETTE PORTILLO, individually and on behalf of a class of similarly situated individuals,

Plaintiff,

vs.

NEBULA GENOMICS, INC., a Delaware Corporation, META PLATFORMS, INC., a Delaware Corporation, MICROSOFT CORPORATION, a Washington Corporation, and GOOGLE LLC, a Delaware Limited Liability Company,

Defendants.

Case No. 1:24-cv-09894-JIC

Hon. Jeffrey I. Cummings

**DEFENDANT GOOGLE LLC'S MEMORANDUM IN SUPPORT OF**

**ITS MOTION TO DISMISS CLASS ACTION COMPLAINT**

**UNDER RULES 12(b)(2) & 12(b)(6)**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

A. Google Analytics and Tag Manager ..... 2

B. Plaintiff's Allegations ..... 2

III. LEGAL STANDARD ..... 3

A. Motion to Dismiss Under Rules 12(b)(2) and 12(b)(6) ..... 3

IV. ARGUMENT ..... 4

A. The Court Lacks Personal Jurisdiction Over Google. ..... 4

1. Google Is Not Subject to This Court's General Jurisdiction. ..... 4

2. Google Is Not Subject to This Court's Specific Jurisdiction. ..... 5

a. Google Did Not Purposefully Avail Itself of Illinois ..... 5

b. As Demonstrated Through Sworn Declarations, None of Google's Conduct at Issue Actually Occurred in Illinois. ..... 7

c. Google Did Not Purposefully Direct Its Activities at Illinois. ..... 8

d. Plaintiff's Claim Does Not Arise Out of Google's Contacts with Illinois. ..... 9

3. Exercising Jurisdiction Over Google Does Not Comport with Traditional Notions of Fair Play and Substantial Justice. ..... 10

B. The Complaint Fails to State a Claim for Unjust Enrichment. ..... 11

1. Unjust Enrichment Is Not a Standalone Claim in Illinois ..... 11

2. Plaintiff Fails to State a Claim for Unjust Enrichment. ..... 12

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aiello v. Invision Mktg. Sols.*,
2019 WL 1875354 (N.D. Ill. Apr. 26, 2019) ............ 13

*Asahi Metal Indus. Co., Ltd. v. Super. Ct.*,
480 U.S. 102 (1987) ............ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............ 3

*Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*,
493 F.3d 841 (7th Cir. 2007) ............ 13

*Ass'n Benefit Servs. v. Advanceps Holding Corp.*,
2004 WL 2101928 (N.D. Ill. Sept 21, 2004) ............ 15

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (2005) ............ 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............ 3

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ............ 11

*Brantley v. Prisma Labs, Inc.*,
2024 WL 3673727 (N.D. Ill. Aug. 6, 2024) ............ 6, 7, 8

*Bridges v. Blackstone, Inc.*,
66 F.4th 687 (7th Cir. 2023) ............ 12

*Brinley Holdings, Inc. v. Husch Blackwell LLP*,
2022 WL 80271 (N.D. Ill. Jan. 7, 2022) ............ 15

*Bristol-Myers Squibb Co. v. Super. Ct.*,
137 S. Ct. 1773 (2017) ............ 8

*Brook v. McCormley*,
873 F.3d 549 (7th Cir. 2017) ............ 5, 7

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ............ 5, 8, 10

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ............ 15

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ..................... 4

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) ..................... 2, 13

*Dwyer v. Am. Express Co.*,
652 N.E.2d 1351 (Ill. Ct. App. 1995) ..................... 14

*GCIU-Emp. Ret. Fund v. Goldfarb Corp.*,
565 F.3d 1018 (7th Cir. 2009) ..................... 3

*Gullen v. Facebook.com, Inc.*,
2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ..................... 9

*Hogan v. Amazon.com, Inc.*,
2022 WL 952763 (N.D. Ill. Mar. 30, 2022) ..................... 14, 15

*Hollinger Int'l, Inc. v. Hollinger, Inc.*,
2006 WL 3827326 (N.D. Ill. Dec. 27, 2006) ..................... 12

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) ..................... 12, 13

*Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*,
326 U.S. 310 (1945) ..................... 4

*Lighting Prods. Ltd. v. Robertson Transformer Co.*,
2015 WL 719521 (N.D. Ill. Feb. 17, 2015) ..................... 4

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,
20 F.4th 311 (7th Cir. 2021) ..................... 11

*McGoveran v. Amazon Web Servs., Inc.*,
488 F. Supp. 3d 714 (S.D. Ill. 2020) ..................... 7, 9

*N. Grain Mktg., LLC v. Greving*,
743 F.3d 487 (7th Cir. 2014) ..................... 4, 5, 9, 10

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) ..................... 3, 10

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024) ..................... 12, 13, 14

*RAR, Inc. v. Turner Diesel, Ltd.*,
107 F.3d 1272 (7th Cir. 1997) ..................... 5, 6

*Remijas v. Neiman Marcus Grp.*,
794 F.3d 688 (7th Cir. 2015) ..................... 15

*Salkauskaite v. Sephora USA, Inc.*,
2020 WL 2796122 (N.D. Ill. May 30, 2020) ........................................................6, 9, 10

*Solar Micronics, Inc. v. Reddy*,
2023 WL 4564566 (N.D. Ill. July 17, 2023) (Cummings, J.) ....................................11, 12

*Sotelo v. DirectRevenue, LLC*,
384 F. Supp. 2d 1219 (N.D. Ill. 2005) ...................................................................13

*Tagliere v. Horseshoe Hammond, LLC*,
2023 WL 3886135 (N.D. Ill. June 8, 2023) ..............................................................4

*Walden v. Fiore*,
571 U.S. 277 (2014) ............................................................................................5, 6

**Constitutions**

Fourteenth Amendment ...........................................................................................4

**Statutes**

410 ILCS 513/1, *et seq.* .........................................................................................12

735 ILCS 5/2-209(c) ................................................................................................4

28 U.S.C. § 1391(b)(2) and (b)(3) ...........................................................................11

Illinois Genetic Information Privacy Act (GIPA) .................................................11, 12

**Court Rules**

Fed. R. Civ. P. 12(b)(2) .....................................................................................1, 3, 4

Fed. R. Civ. P. 12(b)(3) ...........................................................................................11

Fed. R. Civ. P. 12(b)(6) ...................................................................................1, 3, 11

## I. INTRODUCTION

Plaintiff asserts a single claim against Google—unjust enrichment—on the basis of an attenuated series of alleged events. She alleges that she provided sensitive genetic information to Nebula.org ("Nebula" or the "Website"), that Nebula in turn shared this information with Google, that Google then used this information to enhance a profile of Plaintiff, and that such use adds value to Google's advertising services, although she does not say how or why. Nowhere does Plaintiff allege, for example, that Google actually used her genetic information or anyone else's for targeted advertising, or that she suffered concrete harm. Her unjust-enrichment claim suffers other fatal flaws, too.

But the Court need not even reach the merits of Plaintiff's claim, because she sues Google in a forum that lacks personal jurisdiction. Plaintiff acknowledges that Google is a limited liability company organized under Delaware law and headquartered in California, and that Nebula is a Delaware corporation headquartered in New York. Her claims against Google arise exclusively from Google's relationship with Nebula, to which Google provided software products pursuant to a contract specifying the resolution of disputes in California courts under California law, and which prohibited Nebula from sharing sensitive information with Google. Yet Plaintiff does not identify, as she must, any claim-related conduct by Google that occurred in Illinois, or any conduct that Google directed toward Illinois in connection with its relationship with Nebula. The expansive theory of jurisdiction on which her claim depends would, if accepted, expose vendors like Google to suits by third parties in any state where their *customers' users* reside. That is not the law.

Accordingly, Plaintiff's claim should be dismissed under Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim.

## II. BACKGROUND

Google is a technology company that provides a broad range of products and services, including Google Analytics and Google Tag Manager, which are analytics tools. Dkt. 1 ("Compl.")

¶ 12. Millions of website and app owners rely on Google Analytics as their "go-to platform" to "gain a deeper understanding of their website and app performance." *Id.* ¶ 82. Google takes their trust seriously and provides highly effective and safe tools for websites like Nebula to monitor and enhance their users' experience.

**A. Google Analytics and Tag Manager**

Google Analytics enables website and app developers to more easily understand how users engage with a given website or app. *Id.* ¶ 82. It "collects standard information when a user interacts with a webpage, such as browser, network, and location information, or events like a user's clicks or searches." *Doe I v. Google LLC*, 2024 WL 3490744, at *1 (N.D. Cal. July 22, 2024). Google Analytics "also uses cookies, which are 'small text files that are saved to web browsers' to collect data about web usage." *Id*. Google Analytics enables websites and app developers to understand their users in a competitive and constantly developing market.

Google Tag Manager integrates with Google Analytics and allows websites to manage their tags, or tracking code, through Google, which streamlines website maintenance by relieving developers of the need to edit the website's code directly. *Id.* ¶ 82. Google Tag Manager improves developers' control over a website and helps them better understand the user experience by providing notifications based on user interactions with the website. *Id.* ¶¶ 84–85. In short, Google Tag Manager enhances the functionality of Google Analytics, among other tools.

**B. Plaintiff's Allegations**

Plaintiff alleges that Nebula, through its use of Google Analytics and Tag Manager, shared her genetic information with Google and enabled Google to tie that information to her identity. *See id.* ¶¶ 86–87. As a result, Plaintiff alleges, Google can create personalized ads using this genetic information, which she says adds "incredible value" to Google's advertising services and

helps Google achieve "astronomical ad revenue." *Id.* ¶ 96. She stops short, however, of alleging that Google actually used her genetic information to send any targeted ads.

## III. LEGAL STANDARD

### A. Motion to Dismiss Under Rules 12(b)(2) and 12(b)(6)

"[O]nce the defendant moves to dismiss the Complaint under [Rule] 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). While a plaintiff need only make out a prima facie case if the motion is resolved without an evidentiary hearing, when the defendant submits "affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 782–83. The court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility standard" requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that only pleads a "sheer possibility that a defendant has acted unlawfully" does not meet the standard, and a court is not required to "accept as true a legal conclusion couched as a factual allegation." *Id*. After disregarding such conclusory allegations, a court can rely on its "experience and common sense," *id*. at 679, to determine whether the factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

## IV. ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over Google.

As a threshold matter, dismissal is warranted under 12(b)(2) because the Court lacks personal jurisdiction over Google. For personal jurisdiction to exist over a non-resident like Google (Compl. ¶ 12), the Illinois long-arm statute (735 ILCS 5/2-209(c)) must confer jurisdiction, and such jurisdiction must not violate the due-process clause of the Fourteenth Amendment. Because the Illinois long-arm statute is co-extensive with the Fourteenth Amendment, the "statutory question merges with the constitutional one." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). To satisfy due process, Plaintiff bears the burden of showing (1) that Google has the requisite "minimum contacts" with Illinois *and* (2) that the exercise of jurisdiction would not "offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Plaintiff cannot establish either prong here.

#### 1. Google Is Not Subject to This Court's General Jurisdiction.

Minimum contacts can be satisfied in two ways—general jurisdiction or specific jurisdiction—but Plaintiff cannot establish either. She does not allege that Google is subject to this Court's general jurisdiction, and indeed Google is not. "The threshold for general jurisdiction is very high." *Lighting Prods. Ltd. v. Robertson Transformer Co.*, 2015 WL 719521, at *2 (N.D. Ill. Feb. 17, 2015). General jurisdiction exists only where a defendant's contacts with the forum state are "so 'continuous and systematic' as to render [it] essentially at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 (2014). Absent "exceptional" facts, an entity is "essentially at home" only in its "place of incorporation and principal place of business." *Id.* at 137, 139 n.19; *accord Tagliere v. Horseshoe Hammond, LLC*, 2023 WL 3886135, at *2 (N.D. Ill. June 8, 2023). As a Delaware

LLC headquartered in California, Compl. ¶ 12, Google is not subject to general jurisdiction in Illinois.

**2. Google Is Not Subject to This Court's Specific Jurisdiction.**

Plaintiff likewise cannot meet her burden to establish specific jurisdiction here. Specific jurisdiction requires that the defendant's "contacts" with the forum state "directly relate to the challenged conduct or transaction." *N. Grain Mktg.*, 743 F.3d at 492 (citation omitted). This means Plaintiff must show that (1) Google "purposefully availed [itself] of the privilege of conducting business" in Illinois or "purposefully directed [its] activities at" Illinois and (2) Plaintiff's alleged injury "arises out of" Google's activities in Illinois. *See id.* (citation omitted). Google's forum-related conduct must be so substantial that the company "should reasonably anticipate being haled into court there." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "[R]andom, fortuitous, or attenuated" contacts with the forum are insufficient. *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

Plaintiff fails to establish personal jurisdiction as to Google because she alleges no claim-related conduct by Google that occurred in or was directed at the forum. *See* Compl. ¶¶ 82–91, 102, 127–34. Her alleged injury therefore does not "arise out of" Google's contacts with Illinois.

**a. Google Did Not Purposefully Avail Itself of Illinois.**

Plaintiff makes a series of allegations concerning jurisdiction, but none shows purposeful availment. To start, Plaintiff's boilerplate assertions that Google "transact[s] business" and has "substantial aggregate contacts" in Illinois fail to establish specific jurisdiction. Compl. ¶ 13. Merely "transacting business" in Illinois cannot confer specific jurisdiction unless that "business" is directly tied to the asserted claim and injury. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277–78 (7th Cir. 1997). Plaintiff alleges no such tie. Her allegation as to "substantial aggregate contacts" is a legal conclusion. It also is irrelevant because a court "cannot simply aggregate all of

a defendant's contacts with a state . . . as evidence of the constitutionally-required minimum contacts." *Id.*

Next, Plaintiff alleges that Google "unjustly benefited from [its] collection of genetic data from Plaintiff and other Illinois residents." Compl. ¶ 13. This allegation is deficient not only because it is a bald-faced conclusion of law rather than an assertion of fact, but also because it is contradicted by Plaintiff's allegations that it was *Nebula* who collected such information from Plaintiff and *Nebula* who disclosed it to Google.[1] *See* Compl. ¶¶ 27–32, 83, 87, 89–91.

Moreover, the allegations that Plaintiff is an Illinois resident (*id.* ¶ 8) who accessed Nebula's website from Illinois (*id.* ¶ 13) say nothing about Google's contacts with Plaintiff or Illinois and are not enough to establish personal jurisdiction: "[T]he mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 291; *see also Brantley v. Prisma Labs, Inc.*, 2024 WL 3673727, at *7 (N.D. Ill. Aug. 6, 2024) (dismissing BIPA action where plaintiff relied on his and third party's contacts with forum); *Salkauskaite v. Sephora USA, Inc.*, 2020 WL 2796122, at *4 (N.D. Ill. May 30, 2020) (explaining that defendant's contacts "must come from the activity of the defendant, not from the activity of the plaintiff or a third party," and rejecting argument that Sephora's use of defendant's technology in forum conferred specific jurisdiction). Nowhere does Plaintiff allege that any of Google's suit-related conduct—receipt of her data or creation of her "profile"—occurred in Illinois. *See* Compl. ¶¶ 92–105, 128–34.

As alleged, the relevant conduct occurred *outside* of Illinois. Plaintiff's unjust-enrichment claim is based on Nebula's use of Google Analytics and Google Tag Manager on its website, which allegedly transmitted protected information to Google for use (Plaintiff speculates) in targeted

[1] The judicially noticeable Google Analytics Terms of Service further show that Google directed Nebula *not* to provide Google with any sensitive information. *See* Lam Decl. ¶¶ 11–12; *see also* RJN, Ex. 1.

advertising. *E.g.*, Compl. ¶ 87. But she does not allege that any of Nebula's or Google's conduct occurred in Illinois. There are no allegations, for example, that Nebula used Google Analytics or Google Tag Manager while in Illinois, or that any relevant conduct by Google occurred there. And Plaintiff acknowledges that both Nebula and Google are headquartered in, and formed under the laws of, other states. *Id.* ¶¶ 9, 12.

**b. As Demonstrated Through Sworn Declarations, None of Google's Conduct at Issue Actually Occurred in Illinois.**

On top of Plaintiff's failure to carry her burden on jurisdictional pleading, the declarations submitted by Google in support of this motion confirm that none of Google's conduct with respect to Nebula or Plaintiff occurred in Illinois. As Plaintiff acknowledges, Google is organized under Delaware law and maintains its principal place of business in California. Compl. ¶ 12; Lam Decl. ¶¶ 4–5. The Google team responsible for developing and launching features of the Google Analytics product is located in California. Lam Decl. ¶¶ 7, 9, 11–12. And the team responsible for developing and launching features of the Google Tag Manager product is located in California and New York. Narayan Decl. ¶¶ 4–5. Neither team has members in Illinois. Lam Decl. ¶ 9; Narayan Decl. ¶ 5.

On similar facts, courts in Illinois have declined to exercise personal jurisdiction. *See, e.g.*, *McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 721–22 (S.D. Ill. 2020) (noting that process related to interception of plaintiffs' calls and processing of their voiceprints occurred outside of Illinois except for plaintiffs' initial placement of calls); *Brantley*, 2024 WL 3673727, at *7 (rejecting as "too attenuated" plaintiff's argument that defendant paid a third party to use data originally uploaded in Illinois that the third party had scraped).

Further, Google could not have "reasonably anticipated" being hauled into court in Illinois regarding any dispute arising from the use of Google Analytics or Google Tag Manager by Nebula, which again is located outside of Illinois. *Brook*, 873 F.3d at 552. The Google Analytics Terms of

Service ("GA TOS") that govern Google's relationship with Nebula specifies that disputes arising from that relationship must be resolved in California courts under California law. *See* Lam Decl. ¶¶ 11–12 (citing GA TOS); GA TOS at ¶ 16. Google's Tag Manager Terms of Service Agreement ("GTM TOS") incorporates by reference both the GA TOS and Google's general Terms of Service ("TOS"). *See* Narayan Decl. ¶¶ 7–10 (citing GTM TOS and TOS); GTM TOS; TOS. Like the GA TOS, the TOS applicable to Google users requires that any action be brought in the federal or state courts of Santa Clara County, California. *See* Narayan Decl. ¶¶ 9–10. These agreements show Google's intent to be subject to claims arising from the use of Google Analytics and Google Tag Manager only in California, not in any state in which one of its users (or, as here, its *customers' users*) might operate. *See Burger King*, 471 U.S. at 482 (underscoring the relevance of choice-of-law provisions to purposeful availment); *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017) ("Even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."); *Asahi Metal Indus. Co., Ltd. v. Super. Ct.*, 480 U.S. 102, 112 (1987) ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.").

**c. Google Did Not Purposefully Direct Its Activities at Illinois.**

Equally fatal is Plaintiff's failure to allege that any of Google's marketing activities are targeted at Plaintiff or other Illinois residents specifically. *See* Compl. ¶¶ 92–96, 128–34; *see also Brantley*, 2024 WL 3673727, at *7 ("Prisma's nationwide marketing cannot be a basis to hale Prisma into Court in Illinois—Plaintiff points to no Illinois-targeted marketing."). Despite her boilerplate assertion that Google "engaged, and continue[s] to engage in, conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in this District" (Compl. ¶ 13), nowhere does she identify any conduct that Google "expressly aimed" at

Illinois. *See id.*; *McGoveran*, 488 F. Supp. 3d at 721 (granting motion to dismiss where sole conduct that occurred in Illinois consisted of initial phone calls that plaintiffs placed from Illinois and that Amazon subsequently intercepted); *Salkauskaite*, 2020 WL 2796122, at *5 (no personal jurisdiction without evidence that non-resident defendant who provided technology Sephora used to collect biometric information purposefully aimed its conduct at Illinois). Plaintiff's allegations that *she* initiated contact with Nebula from Illinois when she created an account, requested a genetic report, twice renewed her membership, and accessed Nebula's app do not suggest any targeting of the forum by Google. *See* Compl. ¶¶ 97–100; *McGoveran*, 488 F. Supp. 3d at 722.

Indeed, Plaintiff's own allegations show that Google did not target any of its claim-related activities at Illinois residents. She alleges that Nebula's use of Google Tag Manager means that "[a]ll of the information collected by Google Tag Manager . . . is shared with Google." Compl. ¶ 86. This allegation contemplates uniform conduct by Google with respect to *all* of Nebula's users, not just Nebula's users in Illinois, meaning that Google has not "directed [its] activities at residents of Illinois" as required for purposeful availment. *McGoveran*, 488 F. Supp. 3d at 722; *Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) ("Because plaintiff does not allege that Facebook targets its alleged biometric collection activities at Illinois residents, the fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook.").

**d. Plaintiff's Claim Does Not Arise Out of Google's Contacts with Illinois.**

Finally, because Plaintiff does not identify any claim-related conduct by Google that occurred in or was directed at Illinois, she has not plausibly alleged that her injury "arises out of" Google's contacts with Illinois. *N. Grain Mktg.*, 743 F.3d at 492. "Because the litigation does not arise from contacts that [Google itself] created with Illinois or actions purposefully directed at residents of Illinois, the Court [should] find[] that Plaintiff[] ha[s] failed to make a *prima facie* showing of specific personal jurisdiction . . . ." *McGoveran*, 488 F. Supp. 3d at 723.

### 3. Exercising Jurisdiction Over Google Does Not Comport with Traditional Notions of Fair Play and Substantial Justice.

This Court need not evaluate whether jurisdiction in Illinois would violate notions of fairness and substantial justice if it finds that a defendant lacks the requisite minimum contacts with the forum. *See Salkauskaite*, 2020 WL 2796122, at *5 (where contacts insufficient, no further "fair play and substantial justice" analysis required). But in any event, exercising jurisdiction over Google would "offend traditional notions of fair play and substantial justice," which is an independent reason to dismiss the Complaint. *N. Grain Mktg.*, 743 F.3d at 492. Subjecting Google to personal jurisdiction on the diaphanous allegations here would risk subjecting it, and companies like it, to suit in every state where its customers' users are located. This is not the law.

In assessing whether the exercise of jurisdiction would comport with "fair play and substantial justice," courts consider:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies.

*Purdue Res. Found.*, 338 F.3d at 781 (quoting *Burger King*, 471 U.S. at 477). Litigating this dispute in Illinois would burden Google because its witnesses and evidence are located elsewhere—primarily in California, where (not coincidentally) its forum-selection clauses direct all legal disputes. Lam Decl. ¶¶ 7, 9, 11–12; Narayan Decl. ¶¶ 4–5, 7–10. And California has a strong interest in litigation regarding the conduct of a company headquartered in California, where that company has contracted for disputes arising from its relationship with Nebula to be heard, where a critical mass of witnesses and evidence are located, and where Google employs tens of thousands of people. *See* Lam Decl. ¶¶ 5–7, 9, 11–12; Narayan Decl. ¶¶ 4–5, 7–10. Accordingly,

the Complaint should be dismissed for lack of personal jurisdiction.[2]

### B. The Complaint Fails to State a Claim for Unjust Enrichment.

Finally, the Complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for two reasons: (1) there is no standalone claim for unjust enrichment in Illinois; and (2) even if there were, Plaintiff has failed to state such a claim.

#### 1. Unjust Enrichment Is Not a Standalone Claim in Illinois.

As this Court has recognized, "unjust enrichment is not a separate cause of action" under Illinois law. *Solar Micronics, Inc. v. Reddy*, 2023 WL 4564566, at *6 (N.D. Ill. July 17, 2023) (Cummings, J.); *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324–25 (7th Cir. 2021) (same); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (same). Instead, unjust enrichment is a "condition" that arises from "unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence." *Solar Micronics*, 2023 WL 4564566, at *6. Untethered to a substantive claim, an unjust-enrichment claim falls flat. *See id.*

Here, Plaintiff's claim is untethered to a substantive claim. She does not allege that Google violated the Illinois Genetic Information Privacy Act ("GIPA") or committed any other predicate tort. Instead, she bootstraps her unjust-enrichment claim against *Google* to her GIPA claim against *Nebula*. This is impermissible for two reasons. First, Plaintiff does not allege that Google violated GIPA, yet she seeks a remedy from Google for *Nebula's* alleged violation. Google's liability for unjust enrichment cannot flow from Nebula's alleged wrongful conduct. Second, given that Plaintiff's GIPA and unjust-enrichment claims rest on the same facts, it is clear that Plaintiff is attempting to use unjust enrichment as a vehicle for evading GIPA's extraterritorial limits, which

---

[2] For the same reasons, venue in this District also is improper. *See* Compl. ¶ 15; 28 U.S.C. § 1391(b)(2) and (b)(3). Dismissal under Rule 12(b)(3) for improper venue, therefore, is warranted as well.

prevent her from bringing such a claim against Google.[3] *See* 410 ILCS 513/1, *et seq.*; *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852–53 (2005) (explaining that Illinois statutes do not have "extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute"). For all these reasons, Plaintiff's unjust-enrichment claim cannot stand alone.

**2. Plaintiff Fails to State a Claim for Unjust Enrichment.**

Even if unjust enrichment were cognizable as a standalone claim here, Plaintiff's allegations would fail to satisfy the essential elements. Illinois law requires a plaintiff to show that the defendant "unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Solar Micronics*, 2023 WL 4564566, at *6. Plaintiff must allege facts showing that:

> (300) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant.

*Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 852 (N.D. Ill. 2024) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). "Under each scenario, the plaintiff may recover under the theory of unjust enrichment only if it can show that it—rather than the defendant—is entitled to the benefit." *Hollinger Int'l, Inc. v. Hollinger, Inc.*, 2006 WL 3827326, at *3 (N.D. Ill. Dec. 27, 2006). Plaintiff fails to allege facts resembling any of these scenarios.

First, she does not allege that Nebula or any of Google's advertisers intended to pay Plaintiff but mistakenly paid Google. In fact, she does not even plausibly allege that Google

---

[3] Nor would a GIPA claim against Google be meritorious. *See, e.g.*, *Bridges v. Blackstone, Inc.*, 66 F.4th 687, 689 (7th Cir. 2023) (affirming dismissal of GIPA claim against disclosure recipient).

received any benefit from Plaintiff's data.

Second, Plaintiff fails to allege that Google committed any predicate tort or statutory violation either to procure protected information or to earn revenue from advertisers. *See Ramirez*, 729 F. Supp. 3d at 852 (rejecting plaintiffs' argument that defendants acted wrongfully where predicate ICFA and intrusion-upon-seclusion claims failed); *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[C]onduct rises to the level of *wrongful*, in the context of an unjust enrichment claim, when it violates the law."). Absent such allegations, she cannot recover on a wrongful-conduct theory because Illinois requires plaintiffs to "set out specific factual allegations which would support the conclusion that [the defendant's] conduct in procuring the payments from [a third party] was wrongful." *HPI*, 545 N.E.2d at 679.

Plaintiff has identified no "wrongful conduct" by Google. She does not claim, for instance, that it was wrongful to make Google Analytics and Google Tag Manager available to Nebula. *See Doe I*, 2024 WL 3490744, at *3–4 ("There is nothing inherently unlawful about Google offering its source code to health care providers[.]"). Nor does she claim that the tools themselves are illegal. Even if Nebula collected sensitive information from Plaintiff, this would not change that Google directed Nebula *not* to send it to Google. *See* GA TOS at ¶ 7. Any failure by Nebula to follow this directive cannot implicate Google in any wrongdoing. *See Aiello v. Invision Mktg. Sols.*, 2019 WL 1875354, at *2 (N.D. Ill. Apr. 26, 2019) (rejecting argument that defendant was liable for unjust enrichment when third party was responsible for plaintiffs' injury); *see also Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1234 (N.D. Ill. 2005) (dismissing unjust-enrichment claim where plaintiff failed to allege entitlement to advertising fees defendant received). There is no basis to infer that Google procured her data through wrongful conduct from the anodyne allegations that Nebula used Google Analytics and that Google is generally profitable. *See, e.g.*, Compl. ¶¶ 5, 131.

Plaintiff's assertion that Google obtained her data "without authorization" fares no better, as Nebula's policies disclosed that her data would be shared with Google and other third parties. By creating an account and registering a test kit with Nebula, Plaintiff assented to Nebula's Terms of Service and Privacy Policy. *See* RJN, Exs. 2-A, 2-B; *see also* Compl. ¶¶ 88, 97. Nebula's Privacy Policy discloses that Nebula shares "User Data" with "marketing and analytics services" for such purposes as recognizing a user "as an existing user." *See* RJN Ex. 3 at 7; *see also* Ex. 4 at 6. What is more, the Privacy Policy explains that Nebula uses Google Analytics "for the purposes of understanding our website usage." *See* RJN Ex. 3 at 11; RJN Ex. 4 at 4, 9. Nebula's Cookie Policy likewise discloses the use of "Google Tag Manager" for "advertising and analytics." *See* RJN Ex. 5 at 2–3; RJN Ex. 6 at 2–3. Given that Plaintiff expressly authorized Nebula's disclosure to Google, she can hardly complain that Google lacked authorization to receive her information.

Third, Plaintiff makes no attempt to explain how Google is profiting from her data and how she has a "better claim" to those profits. *See Ramirez*, 729 F. Supp. 3d, at 853 (dismissing unjust-enrichment claim where defendant profited from sale of plaintiffs' data because "Plaintiffs simply d[id] not have a better claim to their data than Defendant"); *Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *8 (N.D. Ill. Mar. 30, 2022) (dismissing unjust-enrichment claim where plaintiffs failed to allege "how their specific images" made Amazon's technology "more valuable or profitable to Amazon"). Indeed, courts have rejected similar claims that personal data hold intrinsic value. *See* Compl. ¶ 131; *Ramirez*, 729 F. Supp. 3d, at 851–52 (concluding that plaintiffs' data, including addresses, social security numbers, and phone numbers, had minimal value); *Dwyer v. Am. Express Co.*, 652 N.E.2d 1351, 1356 (Ill. Ct. App. 1995) (dismissing privacy claim because credit-card holders' names had "little or no intrinsic value"). Plaintiff does not allege that she ever intended to monetize her data, that she had any ability to monetize it, or that Google deprived her of any value. *See Ramirez*, 729 F. Supp. 3d, at 853 (claim failed under *HPI*'s third prong because

defendants did not deprive plaintiffs of "any value of their information"); *Remijas v. Neiman Marcus Grp.*, 794 F.3d 688, 695 (7th Cir. 2015) (no standing to sue for loss of "property right" in "private information" absent allegation "that the plaintiffs could sell their personal information for value").

Finally, Plaintiff has not alleged plausible facts to show the essential element of detriment. *See Ass'n Benefit Servs. V. Advanceps Holding Corp.*, 2004 WL 2101928, at *3 (N.D. Ill. Sept 21, 2004) (dismissing claim where plaintiff failed to plead detriment). Illinois law requires a plaintiff to plead "a detriment—and, significantly, a connection between the detriment and the defendant's retention of the benefit." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 519 (7th Cir. 2011). But Plaintiff does not sufficiently allege that Google's use of her information has been detrimental to her. *See* Compl. ¶¶ 128–34. Indeed, the word "detriment" makes only one, conclusory appearance in her 134-paragraph Complaint. *See id.* ¶ 128. Her unsupported allegation that Google is selling more advertisements by retaining her information does not establish the requisite connection. *See* Compl. ¶¶ 5, 131. For example, in *Hogan*, the court dismissed an unjust-enrichment claim as "too attenuated" where the plaintiffs had not sufficiently connected the alleged detriment, the BIPA violation, with the alleged benefit, Amazon's profits from selling its facial recognition technology, given that Amazon had trained its technology using thousands of customers' images—not just plaintiffs' images. *Hogan*, 2022 WL 952763, at *8; *see also Brinley Holdings, Inc. v. Husch Blackwell LLP*, 2022 WL 80271, at *7 (N.D. Ill. Jan. 7, 2022) (dismissing unjust-enrichment claim where plaintiffs failed to allege "a sensible theory" connecting alleged benefit and alleged detriment).

## V. CONCLUSION

Because Plaintiff cannot establish personal jurisdiction and fails to state a claim, the Complaint should be dismissed.

Dated: January 7, 2025

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Debra Bogo-Ernst*

Debra Bogo-Ernst (IL Bar No. 6271962)
Dernst@willkie.com
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, IL 60654-3406
Telephone: (312) 728-9062
Facsimile: (312) 728-9199

Benedict Y. Hur (*pro hac vice*)
Simona A. Agnolucci (*pro hac vice*)
Eduardo E. Santacana (*pro hac vice*)
David D. Doak (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
333 Bush Street, 34th Floor
San Francisco, CA 94134
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

*Attorneys for Defendant*
*Google LLC*

## CERTIFICATE OF SERVICE

I, Debra Bogo-Ernst, hereby certify that on January 7, 2025, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which provides service to all counsel of record.

Dated: January 7, 2025

/s/ *Debra Bogo-Ernst*

Debra Bogo-Ernst (IL Bar No. 6271962)
DErnst@willkie.com
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, IL 60654-3406
Telephone: (312) 728-9062
Facsimile: (312) 728-9199

*Counsel for Defendant Google LLC*