**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| ANTOINETTE PORTILLO, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff*,<br><br>-against-<br><br>NEBULA GENOMICS, INC., a Delaware Corporation, META PLATFORMS, INC., a Delaware Corporation, MICROSOFT CORPORATION, a Washington Corporation, and GOOGLE LLC, a Delaware Limited Liability Company,<br><br>*Defendants*. | Case No. 24-CV-9894 |

**DEFENDANT NEBULA GENOMICS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO TRANSFER OR
<u>IN THE ALTERNATIVE TO DISMISS</u>**

January 7, 2025

| | |
|---|---|
| WALLACE NEEL PLLC<br>Wallace Neel, Esq.<br>One Blue Hill Plaza, LL Suite 1509<br>Pearl River, NY 10965 | Riley Safer Holmes & Cancila LLP<br>Blake Kolesa<br>1 South Dearborn St., Suite 2200<br>Chicago, IL 60603<br><br>Geoffrey G. Young<br>810 Seventh Avenue, Suite 3505<br>New York, NY 10019 |

*Attorneys for Nebula Genomics, Inc.*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ....................................................................................... 1

**ALLEGATIONS OF THE COMPLAINT** ...................................................................... 4

**ARGUMENT** ...................................................................................................................... 6

    I.    TRANSFER IS WARRANTED UNDER 18 U.S.C. § 1404 BECAUSE PLAINTIFF AGREED TO EXCLUSIVE VENUE IN MASSACHUSETTS ............... 6

    II.   DISMISSAL IS WARRANTED UNDER RULE 12(B)(6) ON SEVERAL INDEPENDENT GROUNDS ....................................................................................... 7

        A.   *Legal Standard*................................................................................................ 7

        B.   *The Complaint Fails to Allege that Any Data Concerning Plaintiff was Wever Transferred to any Third-Party* ..................................................................... 8

        C.   *The Complaint Fails to Allege that "Genetic Information" Was Transmitted by Nebula's Web Site* ....................................................................................... 10

        D.   *The Complaint Fails to Allege the Disclosure to Google of "the Identity of Any Person Upon Whom a Genetic Test is Performed or the Results of a Genetic Test in a Manner that Permits Identification"* .................................................................. 12

**CONCLUSION** ............................................................................................................... 13

**TABLE OF AUTHORITIES**

**Cases**

*Atlantic Marine Construction Co. v. U.S. Dist. Ct. for the Western Dist. of Texas,* 571 U.S. 49 (2013) ................................................................................................................ 7
*B.K. v. Eisenhower Medical Ctr.,* 721 F. Supp. 3d 1056 (C.D. Cal. 2024) ...................... 10
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 8
*Brooks v. Ross,* 578 F.3d 574 (7th Cir. 2009) ................................................................... 8
*EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007) ............................. 8
*Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960 (N.D. Ill. 2020) ......................... 8
*IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606 (7th Cir. 2006). . 7
*Jauquet v. Green Bay Area Cath. Educ., Inc*., 996 F.3d 802 (7th Cir. 2021) ..................... 8
Nienaber v. Overlake Hosp. Med. Ctr., 733 F. Supp. 3d 1072  (W.D. Wash. 2024) 9, 10
*Petropoulos v. City of Chicago,* 448 F. Supp. 3d 835 (N.D. Ill. 2020) .............................. 8

**Statutes**

18 U.S.C. § 1404(a) ........................................................................................................... 7

410 ILCS 513/10 .............................................................................................................. 11

410 ILCS 513/30(a). ................................................................................................... 3, 12

Defendant Nebula Genomics, Inc. ("Nebula") moves this Court to dismiss the Class Action Complaint ("Complaint") filed by Plaintiff Antoinette Portillo ("Plaintiff"), which asserts a single claim against Nebula under the Illinois Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/15 and 513/30.[1]

## PRELIMINARY STATEMENT

This action should be transferred to the District of Massachusetts under the forum selection clause agreed to by the Plaintiff (discussed below), or, in the alternative, dismissed for failure to state a claim.

As a threshold procedural matter, this action is in the wrong Court. Under the applicable Terms of Use for Nebula's website, Plaintiff's claim must be brought in Suffolk County, Massachusetts, pursuant to the forum selection clause in the operative Terms of Use of Nebula's website, to which Plaintiff agreed when she registered and renewed in 2021 and 2022. As such, under 18 U.S.C. § 1404(a), Plaintiff's claim against Nebula must be transferred to the District of Massachusetts.

On substance, the Complaint should be dismissed. The gravamen of Plaintiff's one-count Complaint against Nebula is that Nebula violates GIPA when its web site allegedly sends "genetic information" to Meta, Google, and/or Microsoft by allegedly transmitting data that a user has created an account with Nebula and requested a test kit to take a cheek swab. However, taking all allegations as true, the Complaint fails to state a claim.

*First,* none of Plaintiff's "genetic information" is ever alleged to have been transmitted to any third-party. The Complaint only alleges that Plaintiff requested one cheek-swab test kit from Nebula, "took" that swab test in 2021, and reviewed the results. No other detail is provided, save

---

[1] The parties have agreed to a 35 day/21 day briefing schedule.

1

that she "cancelled" the annual membership service sometime in 2022-2023. Importantly, no allegation is made that Nebula transmitted any data created with respect to Plaintiff's sole 2021 test. Instead, the Complaint appears more focused on what *might* befall a hypothetical user who used Nebula's web site after October 2, 2024—the date as of which all of the allegations of concerning the operation of the web site are stated. No such speculation should be credited, as Nebula complies with all pertinent regulations. More to the point, Plaintiff herself can face no such hypothetical, because she alleges that she stopped using Nebula's web site years ago.

*Second,* and relatedly, Plaintiff does not allege that any of the third-party software code that forms the crux of her claims was even installed on Nebula's web site at any time between her initial purchase in March 2021 and her cancellation of it sometime in the year following her July 2022 renewal. Plaintiff admits to having no idea when Nebula's website first installed Microsoft's code that she claims transmitted "genetic information."

But the Complaint alleges the state of the web site today, not in 2021-2023. Plaintiff concedes no knowledge of when the any of Meta's "Facebook Pixel" and Google's "Tag Manager," Microsoft's "Conversion Tracker," or Microsoft's "Clarity" (together, the "Alleged Transmitting Software") were installed. Dkt. 1 ¶¶ 47, 57, 71 ("At an unknown date, Nebula installed [each code]"). Equally important is that Plaintiff does not allege what the functionality of those features or Nebula's web site were in 2021-2023. All of the allegations concerning the capabilities and defaults of the web site and the Alleged Transmitting Software today. But Plaintiff admits she has not used the site in years.

*Third,* even if the Complaint could overcome those dispositive defects (and it cannot), it still would fail to allege that any of the data at issue was "genetic information" within the meaning of GIPA. Plaintiff alleges that the Allegedly Transmitting Software can, in theory, transmit data

indicating that a user (1) has created an account, (2) has registered to take a test, and (3) has requested a test kit to potentially submit a test specimen (a saliva swab). There is no allegation that Plaintiff's alleged use of the web site would have caused transmission of any data that would reveal genetic information. And again, none of Plaintiff's own data of any sort is alleged to have been transmitted to any third party in 2021-2023.

*Fourth,* even if all of those hurdles were cleared, a civil claim under GIPA requires not only that protected information be disclosed, but that it be disclosed in a manner that "permits identification" of the tested person. But (1) no identifier whatsoever is alleged to have been sent to Google, and (2) only anonymized code is alleged to have been sent to Meta (an alphanumeric "Facebook ID") and Microsoft (an alphanumeric code called "MUID"). Because Section 30 of GIPA provides a cause of action only where unauthorized disclosure is made of "the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test," 410 ILCS 513/30, no claim lies here.

In sum, this is a Complaint of hypotheticals. It appears that in late 2024, someone logged in to the Nebula web site and canvassed it—in its 2024 form—trying to glean some possible combination of facts that might yield some plausible theory on which some hypothetical user could claim that GIPA had been violated. But even with that vast leeway, no hypothetical set of facts has been alleged to exist which would violate GIPA. At best, the Complaint alleges that after October 2, 2024, a hypothetical user of Nebula's web site could have data sent to Meta, Google, or Microsoft indicating the user created an account and requested a swab-test kit for potential use. The Complaint's ominous intonation that "[u]nbeknownst to its customers, Nebula shares their highly sensitive and personal genetic test results with third parties, entirely without the customer's

3

consent"[2] can be ignored: nothing of the sort is alleged to have actually occurred to anyone after October 2, 2024, much less to Plaintiff in 2021-2023.

For the reasons below, the Complaint should be transferred or dismissed with prejudice.

## ALLEGATIONS OF THE COMPLAINT

The Complaint alleges that, in March 2021, Plaintiff "created an account with Nebula.org," and then "purchased" a test kit and later "took" the test and "requested a report on Nebula's analysis of her genetic test, which she then reviewed." Dkt. 1 ¶ 97–98. Plaintiff "subsequently purchased a renewal of her Nebula membership, first in July of 2021 and again in July of 2022, after which she cancelled her membership." *Id.* ¶ 99.

Importantly, the Complaint does not allege anywhere that Nebula transmitted to any person or entity (1) data stating that Plaintiff (or anyone else) ever actually submitted a genetic test specimen to Nebula, as opposed to simply creating an account and requesting a test kit; nor (2) data constituting the actual result(s) of any genetics test related to any person. Rather, the Complaint rapidly boils down to claims that the Nebula website may send data to Meta, Google, or Microsoft that indicates that a user (but not Plaintiff) created an account, registered to take a test, and requested a test kit to potentially submit a test.

As to Meta, Plaintiff alleges that the "Facebook pixel" was programmed to "transmit to Meta certain information" including "information regarding consumers' purchases and registrations of genetic testing kits," and to "send this information to Meta along with the consumer's unique Facebook ID." *Id.* ¶¶ 48–49. Upon signup, data is sent to Meta stating that a "customer has completed the signup process and registered a DNA test kit." *Id.* ¶ 50. If a customer later "purchase[s] a testing kit," that data is sent as well. *Id.* ¶ 51. No other information is alleged

---

[2] Dkt. 1 ¶ 3.

4

to be sent to Meta, including (as noted above) any information concerning the submission by anyone (including Plaintiff) of a test specimen for results, and/or of the transmission of actual genetic test results. A "Facebook ID" is also allegedly "assigned to each Facebook user and used to track user activity." *Id.*

As to Google, the allegations are substantively identical: Plaintiff alleges that the "Tag Manager" code sends Google data "confirming that the customer has completed the signup process and registered a DNA test kit," and that it "also discloses to Google when a customer has purchased a testing kit." *Id.* ¶¶ 88–89. Again, no allegation of any transmission of genetic test results whatsoever—including those of Plaintiff—is alleged. Notably, the Complaint does not allege that even an anonymized form of identifying information is sent to Google.

As to Microsoft, the allegations are again substantively identical, but with a twist: two separate items of code are put in play. First, the Microsoft Conversion Tracking tool allegedly sensed when "a user sign[ed] up on Nebula.org," immediately sent data "confirming that the customer has completed the signup process and registered a DNA test kit" and then "discloses to Microsoft when a customer has purchased a testing kit." *Id.* ¶¶ 60–61. The Complaint concludes, "Accordingly, for every Nebula user – including Plaintiff and the Class – who has visited Nebula.org's website and used its DNA analysis services, Nebula has communicated to Microsoft that the user has undergone genetic testing, in violation of GIPA." *Id.* ¶ 62. But that conclusion is nowhere in the preceding allegations: there is no claim that any data was transmitted indicating that any test sample was submitted to "undergo[] genetic testing." Conversion Tracker is also alleged to "assign[] and transmit[] to Microsoft the user's unique Microsoft user ID ("MUID")

5

…. a unique identifier generated by Microsoft and assigned to a specific browser to track users' activity across the internet." *Id.* ¶¶ 54-56.

The secondary tranche of claims concerning Microsoft relates to "Microsoft Clarity," as to which Plaintiff alleges that "[c]ustomers can access" a "complimentary report on different genetic traits associated with their genome sequence." *Id.* ¶ 73. Then, "[w]hen a user enters the 'Traits' webpage, an HTTP session is sent to Microsoft via Clarity sharing the customer's test results." *Id.* ¶ 74.

The Complaint then depicts another screenshot with red-outlined phrases such as: "'Below average genetic predisposition to' , 701, 670,700, [429, 27], 'class= paper-trait.'" *Id.* ¶ 75 (reprinted verbatim). The Complaint stopped the red outlining after "predisposition to" and before the string of ", 701, 670,700, [429, 27], 'class= paper-trait.'" Another red-outlined phrase amid the code is "'Very low genetic predisposition to' , 726, 685, 725, [429, 27, 1148], …" Again, the red outlining ceases after "disposition to." None of those phrases (whether outlined in red or not) actually adds an object to the prepositional phrase beginning with "to." The Complaint does not allege what genetic information is allegedly conveyed by the data "726, 685, 725, [429, 27, 1148]." And it bears repeating that Plaintiff does not allege anywhere that *she* "access[ed]" a "complimentary report on different genetic traits associated with their genome sequence" or "enter[ed] the Traits webpage," which the Complaint pleads would be a necessary step to prompt Clarity to transmit data to Microsoft that the user has a "genetic predisposition to 726, 685, 725, [429, 27, 1148]." Indeed, it does not allege that any of the Microsoft code was installed at all during her use of the web site.

## ARGUMENT

**I. TRANSFER IS WARRANTED UNDER 18 U.S.C. § 1404 BECAUSE PLAINTIFF AGREED TO EXCLUSIVE VENUE IN MASSACHUSETTS**

Plaintiff alleges to have commenced using Nebula's services in March 2021, and to have purchased an annual membership in July 2021 and again in July 2022. At each point in time, the Terms of Use to which she agreed provide in part that "[t]his Agreement shall be construed according to the laws of the State of Massachusetts. Venue for any dispute shall lie in Suffolk County, Massachusetts." Neel Decl. Exhs. A -F.

Thus, transfer to the District of Massachusetts is mandated under 18 U.S.C. § 1404(a). *See Atlantic Marine Construction Co. v. U.S. Dist. Ct. for the Western Dist. of Texas,* 571 U.S. 49, 54 (2013) (holding that 1404(a) is the "mechanism for enforcement of forum-selection clauses that point to a particular federal district.") Because the Terms of Use of Nebula's website during the relevant times specified Suffolk County, Massachusetts as the exclusive forum, this action should be transferred there. Forum selection clauses "[should be] given controlling weight in all but the most exceptional cases," and a GIPA class action is a garden-variety case. *Id.*; *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 901–02 (S.D. Ill. 2012) (concluding "browsewrap" terms of service sufficient for enforcement of forum selection clause therein). Thus, "plaintiff's choice of forum merits no weight," and the court "should not consider arguments about the parties' private interests." *Id*. at 63–64. Notably, "plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted" and can only do so arguing that "public policy" requires the Court to ignore the parties' contractual choice—a burden that is "rarely" met. *Id.* And it is not met here: simply because the claims are alleged under Illinois law. Indeed, non-Illinois courts can easily apply Illinois law if it is determined to apply. *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc*., 437 F.3d 606, 611–12 (7th Cir. 2006).

**II.    DISMISSAL IS WARRANTED UNDER RULE 12(b)(6) ON SEVERAL INDEPENDENT GROUNDS**

    **A.  Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must satisfy two "hurdles." *EEOC v. Concentra Health Servs., Inc*., 496 F.3d 773, 776 (7th Cir. 2007): (1) describe the plaintiff's claims and the grounds supporting them in "sufficient detail to give the defendants fair notice" of the claims against them, *id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); and (2) allege more than mere "labels and conclusions" or "formulaic recitations of the cause of action." *Twombly*, 550 U.S. at 555. Indeed, "plaintiffs who merely set forth the statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims . . . must do more." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009).

To survive a motion to dismiss, "complaints cannot merely parrot the statutory language of the claims that they are pleading; rather, they must provide some specific facts to ground those legal claims." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 964 (N.D. Ill. 2020). A court must determine whether the allegations, if true, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Concentra Health Servs.*, 496 F.3d at 773 (quoting *Twombly*, 550 U.S. at 545); *see also Jauquet v. Green Bay Area Cath. Educ., Inc*., 996 F.3d 802, 807 (7th Cir. 2021) ("At the motion to dismiss stage, plaintiffs must set forth 'adequate factual detail to lift their claims from mere speculative possibility to plausibility.'"); *Petropoulos v. City of Chicago,* 448 F. Supp. 3d 835, 840 (N.D. Ill. 2020) ("Raw conclusions are not entitled to a presumption of truth.") (citations omitted). "The plausibility standard is not akin to a 'probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Twombly*, 550 U.S. at 556.

    **B. The Complaint Fails to Allege that Any Data Concerning Plaintiff was Wever Transferred to any Third-Party**

The Complaint does not even attempt to allege that the Alleged Transmitting Software programs—which inarguably constitute the only alleged conduits for the improper transfer of

8

data—were installed or active during her use of Nebula's website in 2021, 2022, and potentially part of 2023. To the contrary, she alleges that each was installed "[a]t an unknown date." Dkt. 1 ¶¶ 71. Moreover, Plaintiff does not allege what the functionality of the web site or the Alleged Transmitting Software were when she used the site. Instead, the Complaint alleges only that the Alleged Transmitting Software was active on Nebula's website as of "October 2, 2024," a date repeatedly referred in the Complaint as the "last viewed" date of the site.

The entirety of Plaintiff's allegations as to her use of Nebula's services is that in 2021, she requested a test, took it, reviewed the results, and cancelled the service. The Complaint discusses at length the alleged functionality of the site today, but does not purport to describe what it was in 2021 to 2023. And Plaintiff admits to not having used the web site for several years.

When a plaintiff "provides no additional factual information *tying her actual activities to the allegations made by the hypothetical* purportedly demonstrating disclosure of Private Information," dismissal must result. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1083–84 (W.D. Wash. 2024). In *Nienaber*, the Western District of Washington dismissed a putative class action complaint that alleged "that Defendant installed and implemented … Facebook Tracking Pixel ("Pixel") and Conversions Application Programming Interface ("Conversions API"), as well as the Google Tag Manager tool-on 'its Website,' which 'secretly enabled' the unauthorized transmission and disclosure of information." The Court dismissed the complaint because:

> Plaintiff makes no allegations …. that Defendant transmitted Private Information *of hers* to third parties through the Private Patient Portal. …. *Instead, the Complaint discusses a hypothetical example* of a patient scheduling an appointment where the user is then directed to communicate information including the type of medicine being sought and the type of appointment being scheduled. Id. ¶ 90. *But Plaintiff neither alleges that she tried* to schedule an appointment through MyChart *nor that she entered the type of*

9

> *medicine she sought or the type of appointment being scheduled* (which would undoubtedly be protected health information), or that the Pixel transmitted her information to Facebook. *All of these types of information are easily and clearly within Plaintiff's control, and Plaintiff cannot maintain her theory of the case as to the MyChart website absent concrete factual allegations that her Private Information entered on Defendant's Private Patient Portal was disclosed.*

*Id.* at 1083 (pleading citations omitted) (emphasis added). Similarly, the Central District of California dismissed a privacy-violation complaint in which:

> …. Plaintiffs' Complaint is 90 pages long but includes less than four pages of vague allegations about Plaintiffs and their experiences with Defendant. The Complaint is replete with conjectures and hypothetical scenarios and patients. *Plaintiffs fail to allege any specificity as to what medical information was allegedly disclosed or when it was disclosed.* B.K. states she started using the Website over three years ago and started receiving unsolicited ads "shortly after" but *provides no more information about the alleged disclosures.* N.Z. alleges the same pattern but states that it occurred "over seven years ago."

*B.K. v. Eisenhower Medical Ctr.,* 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (internal citations omitted).

Here, Plaintiff's allegations are every bit as hypothetical and avoidant as in *Nienaber* and *B.K.* Nowhere does Plaintiff allege what data *of hers* was allegedly transmitted, nor even that the pertinent code of the co-Defendants was installed when she accessed Nebula's website. Instead, Plaintiff alleges what hypothetically might happen if a user on October 2, 2024 or later (1) created an account, (2) registered for a test, and (3) purchased a test kit for potential use. Because Plaintiff has made no allegation that data concerning her genetics test was transmitted to anyone, she has stated no claim under GIPA.

### C. The Complaint Fails to Allege that "Genetic Information" Was Transmitted by Nebula's Web Site

10

Even if the Complaint were read to allege that the Plaintiff had alleged some transmission, Plaintiff's claim would fail because none of data that could have been transmitted could constitute "genetic information" protected by GIPA. *See* 410 ILCS 513/10; *Henry v. AbbVie, Inc.*, No. 23-cv-16830, 2024 WL 4278070, at *5 (N.D. Ill. Sept. 24, 2024) ("[G]enetic information includes (i) The individual's genetic tests; (ii) The genetic tests of family members of the individual; (iii) The manifestation of a disease or disorder in family members of such individual; or (iv) Any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual.") (citing 45 C.F.R. § 160.103). "Genetic services" is defined as "(1) A genetic test; (2) Genetic counseling (including obtaining, interpreting, or assessing genetic information); or (3) Genetic education." *Id.*

The Complaint alleges only that Plaintiff (1) created an account, (2) registered for a test, (3) purchased a test kit, and (4) "took" a test and reviewed results from Nebula. But even if the Complaint is read as if Plaintiff had used the web site today (as opposed to years ago), only items (1) to (3) above are alleged to be transmittable. She is not alleged to have taken any action that would result in the transfer of the results of her test to any third-party, because none of the code at issue is alleged to be capable of transmitting Plaintiff's "genetic information." Meta Pixel is alleged only to transmit data indicating that a "customer has completed the signup process and registered a DNA test kit" and "purchased a testing kit." Dkt. 1 ¶¶ 50-51. Similarly, Google's Tag Manager is alleged only to be capable of transmitting that "the customer has completed the signup process and registered a DNA test kit," and that "a customer has purchased a testing kit." *Id.* ¶¶ 88–89. Plaintiff alleges that Microsoft's Clarity and Conversion Tracker are currently capable of transmit phrases concerning unidentified "propensitites" when the user takes several detailed steps within jump-pages on Nebula's web site, but the Complaint does not allege that Plaintiff took any

11

of those additional steps, such as using the "Traits" feature. Indeed, Plaintiff does not allege that the Traits feature existed in 2021-2023 when she used the service.

At most, the Complaint alleges that if, in 2021 to 2023, she had used Nebula's web site as it is programmed today, it could have transmitted data indicating that she created an account and procured a swab test kit. But merely procuring a swab test kit for potential use is not "request[ing] a genetic test" within the meaning of GIPA, and therefore is not "genetic information." For example, if a kit is requested and never used to submit a specimen, no "genetic services" have been sought within the meaning of GIPA, and no claim lies. Because Plaintiff has not alleged any facts that constitute "genetic information," the claim under GIPA must fail.

### D. The Complaint Fails to Allege the Disclosure to Google of "the Identity of Any Person Upon Whom a Genetic Test is Performed or the Results of a Genetic Test in a Manner that Permits Identification"

Section 30(a) of GIPA prohibits "unauthorized disclosure … of the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test." 410 ILCS 513/30(a). The Complaint does not allege that any such thing occurred as to Plaintiff personally.

Moreover, there is no allegation that Plaintiff's identity nor information that could reveal her identity was transmitted to Google. There is no allegation whatsoever that Google's Tag Manager software conveyed any personally identifiable information. Dkt. 1 ¶¶ 34–41. But a GIPA

12

claim lies only where unauthorized disclosure is made of identifying information of a person who took a test.[3]

Because the Complaint alleges no personal identifiable information was transferred at all—and also fails to allege that any test was taken or that results were unlawfully disclosed—Plaintiff's claim fails as to Google without further inquiry, and should be dismissed.

## CONCLUSION

For the foregoing reasons, Nebula respectfully requests that this Court transfer the action to the District of Massachusetts or, in the alternative, dismiss the Complaint for failure to state a claim with prejudice, along with such other and further relief as the Court deems just, proper, and equitable.

Dated: January 7, 2025

Respectfully submitted,

*/s/ Wallace Neel*
Wallace Neel  8942
WALLACE NEEL PLLC
One Blue Hill Plaza, LL Suite 1509
Pearl River, New York  10965
Tel. (646) 524-6502
Email: wallace@wallaceneel.com

Harnaik (Nick) Kahlon
Blake Kolesa
Riley Safer Holmes & Cancila LLP
1 South Dearborn St., Suite 2200
Chicago, IL 60603
Telephone: (312) 471-8700
Facsimile: (312) 471-8701
Email: nkahlon@rshc-law.com
Email: bkolesa@rshc-law.com

---

[3] Nebula reserves all arguments concerning the nature of the Microsoft MUID and the Facebook ID.

13

          Geoffrey G. Young
          Riley Safer Holmes & Cancila LLP
          810 Seventh Avenue, Suite 3505
          New York, NY 10019
          Telephone: (212) 660-1000
          Facsimile: (212) 660-1001
          Email: gyoung@rshc-law.com

*Attorney for Nebula Genomics, Inc.*