**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | |
|---|---|
| ANTOINETTE PORTILLO, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff*,<br><br>-against-<br><br>NEBULA GENOMICS, INC., a Delaware Corporation, META PLATFORMS, INC., a Delaware Corporation, MICROSOFT CORPORATION, a Washington Corporation, and GOOGLE LLC, a Delaware Limited Liability Company,<br><br>*Defendants*. | Case No. 24–cv–9894<br><br>Judge Jeffrey I. Cummings |

**DEFENDANT NEBULA GENOMICS, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO TRANSFER, OR IN THE ALTERNATIVE, TO DISMISS**

March 6, 2025


WALLACE NEEL PLLC
Wallace Neel, Esq.
One Blue Hill Plaza, LL Suite 1509
Pearl River, NY 10965

RILEY SAFER HOLMES & CANCILA LLP
Geoffrey G. Young
810 Seventh Avenue, Suite 3505
New York, NY 10019

Blake Kolesa
1 South Dearborn Street, Suite 2200
Chicago, IL 60603

*Attorneys for Nebula Genomics, Inc*.

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 3

I. THIS ACTION SHOULD BE TRANSFERRED TO MASSACHUSETTS ............... 3

A. Massachusetts Law Governs, and The Clause is Mandatory ......................... 3

B. The Choice of Forum Clause in Nebula's TOU Covers This Dispute .......... 4

C. Massachusetts Law Compels Transfer of this Action .................................. 5

D. Illinois and Federal Law are Identical, and Compel Transfer ....................... 6

II. DISMISSAL IS WARRANTED UNDER RULE 12(b)(6) ......................................... 7

A. There are No Allegations Concerning Ms. Portillo's Use of the Site ........... 7

B. Requesting a Test *Kit* is Not a Test Result or a Request for a Test ............... 9

C. The Identifying Information Allegedly Sent to Google is Still Unidentified ........................................................................................................ 12

D. The Complaint Fails to Allege that Any Data Concerning Ms. Portillo was Ever Transferred to any Third-Party ........................................................... 13

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Atlantic Marine Construction Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*,
571 U.S. 49 (2013) .................... 3

*B.K. v. Eisenhower Medical Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .................... 8

*Baby Furniture Warehouse Store, Inc. v. Meubles D&F Ltée*,
911 N.E.2d 800 (2009) .................... 5

*Bagg v. HighBeam Research, Inc.*,
862 F. Supp. 2d 41 (D. Mass. 2012) .................... 4

*Boland v. George S. May Int'l Co.*,
969 N.E.2d 166 (Mass. App. 2012) .................... 5

*Calanca v. DNS Mfg. Co.*,
510 N.E.2d 21 (Ill. App. 1987) .................... 6

*Carby's Inc. v. ECI Software Solutions, Inc.*,
No. 21-10384, 2021 WL 9639788 (D. Mass. June 22, 2021) .................... 4

*Continental Cas. Co. v. LaSalle Re Ltd.*,
500 F. Supp. 2d 991 (N.D. Ill. 2007) .................... 6

*Freund v. UBS Fin. Servs., Inc.*,
141 F. Supp. 3d 797 (N.D. Ill. 2015) .................... 4

*Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*,
58 F. Supp. 2d 925 (N.D. Ill. 1999) .................... 6

*IFC Credit Corp. v. Rieker Shoe Corp.*,
881 N.E.2d 382 (Ill. App. 2007) .................... 6, 7

*Kohler v. Leslie Hindman, Inc*,
80 F.3d 1181, 1185 (7th Cir. 1996) .................... 6

*Lewis v. Hill*,
683 F. Supp. 3d 137 (D. Mass. 2023) .................... 3

*Melia v. Zenhire, Inc.*,
967 N.E. 2d 580 (Mass. 2012) .................... 3, 4

*Muzumdar v. Wellness Int'l Network, Ltd.*,
438 F.3d 759 (7th Cir. 2006) .................... 7

Nienaber v. Overlake Hosp. Med. Ctr.,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 8

*Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*,
972 F.2d 753 (7th Cir. 1992) .......... 6, 7

*Taylor v. E. Connection Operating, Inc*.,
988 N.E.2d 408 (Mass. 2013) .......... 5

*Tracy v. Elekta*,
667 F. Supp. 3d 1276 (N.D. Ga. 2023) .......... 9

**Statutes**

28 U.S.C. § 1404 .......... 1, 3, 7, 13

410 ILCS 513/10 .......... 10

410 ILCS 513/30 .......... 1, 9, 11, 12

Defendant Nebula respectfully submits this Reply in further support of its motion to transfer this action to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a) and to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).[1]

## INTRODUCTION

Ms. Portillo's Complaint has been filed in the wrong city and the wrong Court. It should be transferred to Boston. In any event, the Complaint fails to state a claim and should be dismissed outright.

*Transfer to Boston*: Ms. Portillo agreed to Nebula's Terms of Use, which she does not dispute. The Terms of Use to which Ms. Portillo agreed includes a mandatory forum selection clause designating Suffolk County, Massachusetts as the exclusive venue for all disputes (the "Clause"). The Clause is mandatory and broad in scope—covering "any dispute" between Nebula and Ms. Portillo, including this action. Ms. Portillo fails to refute the applicability of the Clause to her action, so her arguments against transfer are unavailing.

*Dismiss outright:* Whether considered by an appropriate court sitting in Boston or by this Court will not change the Complaint's failure to state an Illinois Genetic Information Privacy Act (GIPA) claim. Ms. Portillo's claim against Nebula is brought under Section 30(a) of GIPA, which prohibits "unauthorized disclosure … of the [i] *identity of any person upon whom a genetic test is performed* or the [ii] *results of a genetic test* in a manner that permits identification of the subject of the test." 410 ILCS 513/30(a) (emphasis added). But the Complaint fails to allege any mechanism through which the fact that Portillo took a test or through which the results thereof could possibly have been transmitted to any other Defendant (or anyone at all).

[1] Defined terms used herein shall have the meanings ascribed to them in Nebula's Moving Brief. *See* ECF No. 54.

As a result, the Complaint cannot allege that her identity was disclosed in violation of GIPA or that the results of any genetic test of Ms. Portillo were ever disclosed. Since her Complaint has not and cannot assert any of the unauthorized disclosures giving rise to a claim under section 30(a) of GIPA, Ms. Portillo's claims fail.

When scrutinized, Ms. Portillo's allegations do not even recite the elements of a claim under Section 30(a) of GIPA. There is no allegation that Nebula ever transmitted data consisting of her "test results" or of her identity as a person upon whom a test was performed.

Taking the Complaint's allegations as true, Google and Meta's software offerings admittedly cannot transmit such data—they only transmit information indicating she requested Nebula send her a COVID-like swab test kit, and concededly do not transmit data indicating any later stage of the testing process (such as submission of a cheek swab specimen or the rendering of genetic results).

The Complaint likewise alleges no set of facts under which her identity as a test-taker or her test results could have been transmitted to Microsoft. Although the Complaint alleges that Microsoft *might* receive data concerning a user's test results if that user accesses a certain jump-page within the Nebula web site (the "Traits" page), Ms. Portillo does not claim that she ever accessed that web page.

The First Cause of Action (the only cause of action against Nebula) states as follows:

> 120. Plaintiff … provided Defendant Nebula with "genetic test[s]" and/or the "information derived from genetic testing" with[in] the meaning of GIPA.
>
> 121. Defendant Nebula disclosed the fact that Plaintiff and the Class had taken a genetic test to third parties, together with Plaintiff's and Class Member's unique identifying information.

But the allegations of the Complaint prove that none of the software alleged to have "disclosed" the "fact that Plaintiff … had taken a genetic test" to Meta / Google / Microsoft was

actually capable of transmitting such data. Meta's and Google's software is allegedly only capable of transmitting data suggesting a user has requested a cheek swab testing kit from Nebula for her potential use in swabbing her cheek and returning a specimen for analysis. (Disclosure of that information does not violate Section 30(a).) And, while the Complaint alleges that Microsoft's software *now* has the functionality to transmit certain data that might indicate "Traits" found by a test, that functionality (1) is not alleged to have existed when Ms. Portillo used Nebula's website and, most importantly, that functionality (2) is not alleged to have ever been used by Ms. Portillo.

## ARGUMENT

### I. THIS ACTION SHOULD BE TRANSFERRED TO MASSACHUSETTS

The undisputed Terms of Use executed by Plaintiff provide that "[t]his Agreement shall be construed according to the laws of the State of Massachusetts. Venue for any dispute shall lie in Suffolk County, Massachusetts." This mandatory forum selection clause requires transfer to the District of Massachusetts under 28 U.S.C. § 1404(a), as instructed by the Supreme Court in *Atlantic Marine Construction Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013) (enforcing valid forum selection clauses absent extraordinary circumstances). Plaintiff's arguments—that the Clause does not cover this dispute and is merely permissive—misconstrue both the Clause's language and applicable law.

#### A. Massachusetts Law Governs, and The Clause is Mandatory

Massachusetts law controls the interpretation of the Clause, as the Terms of Use designate Massachusetts law to govern the agreement. *See Lewis v. Hill*, 683 F. Supp. 3d 137, 163–64 (D. Mass. 2023). Under Massachusetts law, forum selection clauses are enforced if they are fair and reasonable, and the opponent bears a "substantial burden" to show otherwise. *Melia v. Zenhire, Inc.*, 967 N.E.2d 580, 595 (Mass. 2012) (quoting *Cambridge Biotech Corp. v. Pasteur Sanofi Diagnostics*, 740 N.E.2d 195, 203 (Mass. 2000)).

Plaintiff offers no evidence—let alone the 'substantial burden' required under Massachusetts law—that enforcing the Clause would be unfair or unreasonable. *See Melia*, 967 N.E.2d at 595. Instead, she asserts, without support, that (1) 'any dispute' excludes her GIPA claim and (2) the Clause is permissive. Both arguments collapse under the Clause's plain text and controlling precedent. As detailed further below, both are wrong: the Clause's reference to "any dispute" is as broad as the sky, and the language that "venue for any dispute shall lie in Suffolk County, Massachusetts"—plainly is mandatory, not permissive.[2]

**B. The Choice of Forum Clause in Nebula's TOU Covers This Dispute**

Plaintiff's attempt to limit the Clause to contractual disputes lacks a textual or legal basis. The phrase 'any dispute' is deliberately broad, encompassing statutory claims like her GIPA action that arise from her use of Nebula's services. *See Freund v. UBS Fin. Servs., Inc.*, 141 F. Supp. 3d 797, 806–07 (N.D. Ill. 2015) (applying "any dispute" Clause even to pre-agreement conduct).

Plaintiff offers no authority from Massachusetts or any other jurisdiction for the proposition that a Clause directing where "venue for any dispute shall lie" would be limited to only contractual disputes. In fact, the governing law is the opposite of Plaintiffs' arguments. *See*, *e.g.*, *Bagg v. HighBeam Research, Inc.*, 862 F. Supp. 2d 41, 45 (D. Mass. 2012) ("[T]ort and statutory claims may "relate to" a contract and fall within the scope of a forum selection clause, even if the complaint contains no explicit contract claims."); *Carby's Inc. v. ECI Software Solutions, Inc.*, No. 21-10384, 2021 WL 9639788, at *2 (D. Mass. June 22, 2021) ("[T]ort claims involving the same operative facts" could give rise to a breach of the agreement containing a forum

[2] Nebula's Terms of Use state "This Agreement shall be construed according to the laws of the State of Massachusetts. Venue for any dispute shall lie in Suffolk County, Massachusetts." *See* ECF No. 54 at 7. For readability, "Venue" and "venue" are substituted throughout without alterations signaled by [brackets].

selection clause "should be heard in the forum selected in the contract.") (citing *Lambert v. Kysar*, 983 F.2d 1110, 1121–22 (1st Cir. 1993)).

### C. Massachusetts Law Compels Transfer of this Action

Massachusetts law is substantially similar to Illinois law as set forth below: where a clause refers to a submission to jurisdiction, it is non-mandatory unless additional language intending exclusivity is included. However, where a clause references venue rather than submission to jurisdiction, there is no such permissive presumption. Such a clause is mandatory.

In *Baby Furniture Warehouse Store, Inc. v. Meubles D&F Ltée*, 911 N.E.2d 800, 802 (2009), the venue selection clause required venue in Quebec for all disputes because it read:

> Any dispute arising out of or concerning this Policy statement shall be governed by the laws of the province of Quebec; and the Authorized Dealer and Ragazzi agree to submit themselves to the jurisdiction of the provincial courts sitting in the province of Quebec for resolution of any disputes arising out of or related to this Policy or the relationship between the Authorized Dealer and Ragazzi Furniture.

The Massachusetts court held that this provision gave Quebec courts "exclusive jurisdiction over any disputes between the parties."

Similarly, the use of "shall lie" here denotes exclusivity, not mere consent to jurisdiction. *See Taylor v. E. Connection Operating, Inc.*, 988 N.E.2d 408, 410 (Mass. 2013) (enforcing mandatory venue clauses).

Plaintiff's citation to *Boland v. George S. May Int'l Co.*, 969 N.E.2d 166, 171–72 (Mass. App. 2012), misses the mark. There, the clause ("jurisdiction shall vest in the State of Illinois") merely consented to jurisdiction without mandating venue—a critical distinction from Nebula's Clause, which explicitly states "venue for any dispute shall lie in Suffolk County, Massachusetts." Unlike *Boland*, this language leaves no room for permissive interpretation.

### D. Illinois and Federal Law are Identical, and Compel Transfer

Plaintiff's claim that Illinois law governs is both meritless and immaterial. The Terms of Use designate Massachusetts law, but even under Illinois or federal interpretations, the Clause's mandatory venue directive prevails.

Illinois respects valid choice-of-law and forum selection provisions, *Kohler v. Leslie Hindman, Inc*, 80 F.3d 1181, 1185 (7th Cir. 1996), and "Illinois law concerning the validity of forum selection clauses is materially the same as federal law," *IFC Credit Corp. v. Rieker Shoe Corp.*, 881 N.E.2d 382, 391 (Ill. App. 2007). The Clause's mandatory language—"Venue shall lie"—mirrors provisions upheld as exclusive under Illinois precedent as this Court and the Seventh Circuit have repeatedly held:

> Our federal contract "law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive."

*Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (applying Illinois law and quoting *Continental Casualty, infra*); *see also Calanca v. DNS Mfg. Co.,* 510 N.E.2d 21 (Ill. App. 1987) (finding "shall be" denotes exclusivity).

Plaintiff cites cases that support Nebula's Motion, rather than undercut it. For example, *Continental Cas. Co. v. LaSalle Re Ltd*., 500 F. Supp. 2d 991, 994 (N.D. Ill. 2007), analyzed the textbook "jurisdiction-specification" clause: "the parties consent to the jurisdiction of the courts of the State of Illinois to resolve their disputes." This Court held that consent to jurisdiction (not a choice of venue) rendered the clause permissive rather than mandatory.

Notably, the *Continental Casualty* Court cited Plaintiff's second case, *Hull 753 Corp. v. Elbe Flugzeugwerke GmbH,* 58 F. Supp. 2d 925, 927 (N.D. Ill. 1999), to support the proposition that "when parties to a contract locate jurisdiction in a certain court, it does not necessarily follow

that they have agreed to venue only in that court." But nothing in the Clause here discusses submission to jurisdiction at all; rather, it states precisely where "venue for any dispute shall lie."

Finally, Plaintiff's citation to *IFC Credit Corp.*, 881 N.E.2d at 39, is of no moment because that case contained no discussion whether the forum selection clause at issue was mandatory or permissive. All parties there agreed that it was mandatory; the dispute was whether it was enforceable for its absence of a *particular* selected venue (the clause required the venue of a party's principal place of business at the initiation of the action). *Id.*

Here, the Clause—"venue for any dispute shall lie"—is similar to the language venue "shall be proper" that the Seventh Circuit found exclusive in *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006).

Both are mandatory specifications of venue, and therefore must be given their intended effect. *Paper Exp.*, 972 F.2d at 757 ("shall be filed" is mandatory). The Clause here, designating Suffolk County, Massachusetts as the location where "venue … shall lie," unequivocally mandates that forum. Plaintiff identifies no extraordinary circumstances to justify overriding it. Transfer to the District of Massachusetts under 28 U.S.C. § 1404(a) is thus mandated.

## II. DISMISSAL IS WARRANTED UNDER RULE 12(b)(6)

The Complaint fails to state a GIPA claim and must be dismissed under Rule 12(b)(6). Plaintiff's Response does not cure these deficiencies.

### A. There are No Allegations Concerning Ms. Portillo's Use of the Site

Plaintiff's Response sidesteps a fatal flaw: the Complaint never alleges that the software purportedly active in October 2024—allegedly capable of transmitting the results of a genetic test to Microsoft (but not to Meta or Google)—was operational when Ms. Portillo used Nebula's site in 2021 through 2023. Without this temporal link, no GIPA violation under Section 30(a) can plausibly be inferred.

The Complaint delves into detail about what user data Microsoft's software could transmit if he or she "access[es]" a "complimentary report on different genetic traits associated with their genome sequence." *Id.* ¶ 73. Plaintiff claims that "[w]hen a user enters the 'Traits' webpage, an HTTP session is sent to Microsoft via Clarity sharing the customer's test results." *Id.* ¶ 74. But Plaintiff does not allege that Ms. Portillo ever "enter[ed] the 'Traits' webpage."

The cases Nebula has already cited are dispositive of the case. When a plaintiff like Ms. Portillo can "provide no additional factual information *tying her actual activities to the allegations made by the hypothetical* purportedly demonstrating disclosure of Private Information," dismissal must result. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1083–84 (W. D. Wash. 2024).

*Nienaber* was another case about Facebook (now Meta) Pixel and Google Tag Manager. There, as here, "Plaintiff makes no allegations …. that Defendant transmitted Private Information *of hers* to third parties …. Instead, the Complaint discusses a hypothetical example …." *Id.* And there, as here, the plaintiff did not allege "that she entered [into the website] the type of medicine she sought or the type of appointment being scheduled (which would undoubtedly be protected health information), or that the Pixel transmitted her information to Facebook." *Id.* The Western District of Washington court dismissed the case "absent concrete factual allegations that her Private Information entered on Defendant's Private Patient Portal was disclosed." *Id.* at 1083 (pleading citations omitted) (emphasis added); *see also B.K. v. Eisenhower Medical Ctr.,* 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (dismissing case where "The Complaint [was] replete with conjectures and hypothetical scenarios" but "Plaintiffs fail[ed] to allege any specificity as to what

medical information was allegedly disclosed or when it was disclosed.”). Plaintiff here fails to allege what data *of hers* was allegedly transmitted.

Rather than grapple with that dispositive gap in the pleadings, Plaintiff shrugs it off, arguing: “The reasonable inference of these allegations is that Plaintiff is informed and believes that they were in use during the time she was a Nebula user.” Plaintiff's Response at 11, ECF No. 65. But such an inference would be *unreasonable*. Three years is an eternity in the digital ad world, and Plaintiff has no basis to state when the Alleged Transmitting Software was first active on Nebula's website.[3]

### B. Requesting a Test *Kit* is Not a Test Result or a Request for a Test

This gap between what a 2024 user *could* do and what Ms. Portillo claims she *actually did* is critical to understanding the hollowness of this suit. The Complaint reads like an attempt to indict the functionality of a web page because—with regard to Microsoft only—it allegedly has the potential to transmit the results of a user's genetic test.

But unless Ms. Portillo claims to have used the “Traits” web page (and she does not), then even that lone avenue to a colorable claim is not available to her. Portillo's sole claim against Nebula arises under Section 30 of GIPA, which prohibits disclosure of “the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test.” 410 ILCS 513/30(a).

[3] Plaintiff also directs the Court to *Tracy v. Elekta*, 667 F. Supp. 3d 1276 (N.D. Ga. 2023), but that case requires dismissal of Plaintiff's claims against Nebula here. In *Tracy*, one of the plaintiffs (Tracy) asserted GIPA violations based on defendant's disclosure of medical data in a third-party breach, but failed to allege she “actually provided [protected genetic information] to [her provider] during her course of treatment;” as a result “it is overly speculative” that the defendant disclosed her genetic results and the court dismissed her GIPA claim. . 667 F. Supp. 3d at 1288. Like Tracy, Ms. Portillo has not sufficiently alleged Nebula disclosed her genetic test results, and Ms. Portillo's GIPA claims also must be dismissed.

A "test" is when the lab scientifically analyzes the swab specimen. *See* 410 ILCS 513/10 ("'Genetic testing' means a test of a person's genes, gene products, or chromosomes for abnormalities or deficiencies ….") Thus, a user who creates an online account with a genetic testing company does not thereby have a genetic test performed. A user who asks Nebula to ship her a COVID-style swab kit to collect her cheek-swab sample and mail it to Nebula does not thereby take a "genetic test;" she merely requests equipment for a potential test. Under GIPA, a "genetic test" requires laboratory analysis of a submitted specimen—not merely ordering a test kit or creating an account. 410 ILCS 513/10 (defining "genetic testing"). Plaintiff's theory—that purchasing a kit equates to taking or performing a test—stretches the statute beyond its text and purpose, undermining its focus on protecting actual genetic data.

This distinction is key to understanding the irreparable flaws of the Complaint: Plaintiff does not allege that Nebula ever transmitted any data concerning a laboratory analysis of a specimen submitted by Portillo containing genes, gene products, or chromosomes for abnormalities or deficiencies—*i.e.*, a "genetic test":

- She concedes that Meta Pixel could not have transmitted any data concerning a test: Pixel is not alleged to be capable of transmitting data that would indicate that a test was requested or conducted. It is alleged only to transmit data indicating that a "customer has completed the signup process and registered a DNA test *kit*" and "purchased a testing *kit*." ECF No. 1 ¶¶ 50–51 (emphasis added).

- She concedes that Google's Tag Manager could not have transmitted any data concerning a test: Google's Tag Manager is not alleged to be capable of transmitting data that would indicate that a test was requested or conducted. It is alleged only to be capable of transmitting that "the customer has completed the signup process and registered a DNA test *kit*," and that "a customer has purchased a testing *kit*." *Id.* ¶¶ 88–89 (emphasis added).

- Microsoft's Clarity and Conversion Tracker are alleged to be capable (as of 2024) of transmitting phrases concerning unidentified genetic "propensities" that a test result shows–but *only if* a user takes several detailed steps within jump-pages on Nebula's

website, like navigating down to the "Traits" page.[4] But if a user does not plumb the depths of the Nebula website to access those features, then—like Meta and Google—Microsoft's software is not alleged to be capable of transmitting any information concerning a "test."

- Critically, the *Complaint does not allege that Ms. Portillo ever visited any of those jump-pages* or took the additional steps concededly required for "test" data to be transmitted, such as using the "Traits" feature.

Thus, there is no allegation that Portillo ever experienced any disclosure—never mind unauthorized disclosure—of either (1) her "identity [as a] person upon whom a genetic test is performed" or (2) "the results of a genetic test in a manner that permits identification" of her as the test subject. *See* 410 ILCS 513/30(a). Google and Meta's software offerings concededly cannot transmit such data, and Microsoft's can only do so (allegedly) when the user accesses parts of Nebula's website that Ms. Portillo does not claim she accessed.

In Response, Plaintiff does not dispute that none of the software identified in her Complaint can transmit test results or even requests for tests. Instead, Plaintiff claims that "[i]f purchasing a genetic test doesn't constitute a 'request for, or receipt of,' a genetic test, then the statute is without meaning." ECF No. 65 at 12. This is false: a Nebula user who asks to be provided with a swab specimen collection kit does not thereby "purchase a genetic test" because the "test of a person's genes, gene products, or chromosomes for abnormalities or deficiencies" does not come until later—and only if the kit recipient actually submits a specimen, which many do not do. To interpret GIPA in the manner advanced by Plaintiff would not further any interest in protecting

[4] This page and the broader capabilities of the Nebula website are not alleged to have existed in 2022 when Plaintiff opened her account. Because this is the only allegation that could colorably yield a transmission of the request for a test or test results (*i.e.*, genetic information), the Complaint's failure to allege it is fatal by itself. It is doubly so when the Court considers that Plaintiff does not claim to have accessed the "Traits" page or similar pages. (It is further so in consideration of Plaintiff's declination of the opportunity to amend her complaint under Rule 15(a)(1)(B) and proceed on the merits of this Complaint. *See* ECF No. 62.)

genetic information because the allegedly-transferred data that Plaintiff bases her claim upon does not indicate that a genetic test occurred, never mind whether its results were disclosed.

Plaintiff's Response misreads GIPA's scope, conflating preparatory actions with protected genetic information and privacy interests. The statute does not cover the data allegedly transmitted via Facebook Pixel or Google Tag Manager.

### C. The Identifying Information Allegedly Sent to Google is Still Unidentified

Nebula's Motion identified that Plaintiff does not even attempt to claim that some identifier was transmitted by Google. In Response, Plaintiff states "[t]he Complaint alleges facts showing that Nebula disclosed to Meta, Microsoft and Google that Plaintiff had taken a genetic test, and provided Plaintiff's identifying information with that disclosure." But what is the identifier that Nebula is alleged to have sent to Google? Paragraph 83 of the Complaint states that "Tag Manager also allows companies such as Nebula to assign a Google Analytics User ID individual to each user." The Complaint does not say that Nebula made any such assignment of a User ID to Ms. Portillo or anyone else.

Paragraph 84 also alleges, "All of the information collected by Google Tag Manager–including, in the case of Nebula, a user's genetic information–is shared with Google, along with the user's unique Google ID." But there is no allegation that Nebula ever used the feature of Tag Manager that creates a "Google ID" or "Google Analytics User ID." No specific identifier tied to Ms. Portillo is alleged to have been sent to Google at all.

Section 30(a) of GIPA prohibits "unauthorized disclosure … of the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test." 410 ILCS 513/30(a). No such disclosure is alleged.

### D. The Complaint Fails to Allege that Any Data Concerning Ms. Portillo was Ever Transferred to any Third-Party

The Complaint does not even attempt to allege that the Alleged Transmitting Software programs—which inarguably constitute the only alleged conduits for the improper transfer of data—were installed or active during her use of Nebula's website in 2021, 2022, and potentially part of 2023. To the contrary, the Complaint alleges that each was installed "[a]t an unknown date." ECF No. 1 ¶ 71. Moreover, Plaintiff does not allege what the functionality of the website or the Alleged Transmitting Software were when she used the site. Instead, the Complaint alleges only that the Alleged Transmitting Software was active on Nebula's website as of "October 2, 2024," a date repeatedly referred in the Complaint as the "last viewed" date of the site.

The entirety of Plaintiff's allegations as to Ms. Portillo's use of Nebula's services is that in 2021, she requested a test, took it, reviewed the results, and cancelled the service. The Complaint discusses at length the alleged functionality of the site today, but it does not purport to describe what it was in 2021 to 2023. It does not purport to allege that she ever used the "Traits" page, which she alleges can cause the transmission of data referencing test results. And Plaintiff admits to not having used the website for several years.

## CONCLUSION

For the foregoing reasons, Nebula respectfully requests that this Court grant its motion to transfer this action to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a) and dismiss the complaint under Rule 12(b)(6) for failure to state a claim.

Dated: March 6, 2025

Respectfully submitted,

*/s/ Wallace Neel*

Wallace Neel
*One of Nebula Genomics, Inc.'s attorneys*

Wallace Neel
WALLACE NEEL PLLC
One Blue Hill Plaza, LL Suite 1509
Pearl River, New York 10965
Tel. (646) 524-6502
Email: wallace@wallaceneel.com

Geoffrey G. Young
Riley Safer Holmes & Cancila LLP
810 Seventh Avenue, Suite 3505
New York, NY 10019
Telephone: (212) 660-1000
Facsimile: (212) 660-1001
Email: gyoung@rshc-law.com

Blake Kolesa
Riley Safer Holmes & Cancila LLP
1 South Dearborn St., Suite 2200
Chicago, IL 60603
Telephone: (312) 471-8700
Facsimile: (312) 471-8701
Email: bkolesa@rshc-law.com

*Attorneys for Nebula Genomics, Inc.*