**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTOINETTE PORTILLO, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>NEBULA GENOMICS, INC., a Delaware Corporation, META PLATFORMS, INC., a Delaware Corporation, MICROSOFT CORPORATION, a Washington Corporation, and GOOGLE LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No. 24-cv-9894<br><br>District Judge Jeffrey I. Cummings |

**DEFENDANT META PLATFORMS, INC.'S REPLY**
**IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION 1

ARGUMENT 2

A. Plaintiff's Express Contract With Meta Covers The Same "Subject Matter" As, And Therefore Defeats, Her Unjust Enrichment Claim 2

B. Plaintiff Does Not Plead A Viable Theory Of Third-Party Unjust Enrichment 5

C. Plaintiff Has Not Suffered A Detriment Connected To Meta's Alleged Benefit 10

D. Meta's Retention Of Any Benefit Is Not "Unjust" 12

E. Plaintiff Does Not Dispute That Her Claim Fails Under California Law 14

CONCLUSION 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aiello v. Invision Mktg. Sols.*,
2019 WL 1875354 (N.D. Ill. Apr. 26, 2019) ....................13

*Asch v. Teller, Levit & Silvertrust, P.C.*,
2003 WL 22232801 (N.D. Ill. Sept. 26, 2003) ....................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7, 13

*Ass'n Benefit Servs., Inc. v. Advanceps Holding Corp.*,
2004 WL 2101928 (N.D. Ill. Sept. 21, 2004) ....................6, 12

*Brinley Holdings, Inc. v. Husch Blackwell LLP*,
2022 WL 80271 (N.D. Ill. Jan. 7, 2022)....................6, 12

*Brown v. State Farm Mut. Auto. Ins. Co.*,
2025 WL 81340 (N.D. Ill. Jan. 13, 2025)....................9

*Buschauer v. Columbia Coll. Chicago*,
579 F. Supp. 3d 1045 (N.D. Ill. 2022) ....................3

*Cleary v. Philip Morris, Inc.*,
656 F.3d 511 (7th Cir. 2011) ....................10, 12, 13

*Driscoll Firm, P.C. v. Fed. City Law Grp., PLLC*,
2023 WL 2375218 (N.D. Ill. Mar. 6, 2023)....................8

*G&S Holdings LLC v. Cont'l Cas. Co.*,
697 F.3d 534 (7th Cir. 2012) ....................2, 5, 14

*Hatcher v. Hatcher*,
158 N.E.3d 326 (Ill. App. 2020) ....................10

*Hogan v. Amazon.com, Inc.*,
2022 WL 952763 (N.D. Ill. Mar. 30, 2022)....................10, 11, 12

*Hollinger Int'l, Inc. v. Hollinger, Inc.*,
2006 WL 3827326 (N.D. Ill. Dec. 27, 2006)....................5, 6

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989)....................1, 5, 8

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ....9

*McNeil v. Salvation Army*,
754 F. App'x 469 (7th Cir. 2019) ....14

*Melzer v. Johnson & Johnson Consumer Inc.*,
2023 WL 3098633 (D.N.J. Apr. 26, 2023) ....11

*Ne. Ill. Reg. Commuter R.R. Corp. v. Judlau Cont., Inc.*,
724 F. Supp. 3d 721 (N.D. Ill. 2024) ....4

*Pelfresne v. Vill. of Lindenhurst*,
2005 WL 2322228 (N.D. Ill. Sept. 16, 2005) ....7

*Pisciotta v. Old Nat'l Bancorp*,
499 F.3d 629 (7th Cir. 2007) ....9

*Plesnik v. Big Lots Stores*,
2014 WL 2024966 (S.D. Ill. May 16, 2014) ....14

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024) ....9

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) ....9

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....4, 13

*Solar Micronics, Inc. v. Reddy*,
2023 WL 4564566 (N.D. Ill. July 17, 2023) ....5

*Sotelo v. DirectRevenue, LLC*,
384 F. Supp. 2d 1219 (N.D. Ill. Aug. 29, 2005) ....6

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ....7

*Utility Audit, Inc. v. Horace Mann Serv. Grp.*,
383 F.3d 683 (7th Cir. 2004) ....3

## INTRODUCTION

Plaintiff's opposition fails to engage with Meta's arguments and only confirms that Meta does not belong in this case. *If* Defendant Nebula acted wrongfully by sharing with Meta the fact that Plaintiff had registered with the Nebula website and purchased a test kit, her grievance is with Nebula. Plaintiff does not plead that *Meta* acted wrongfully at all, much less that it was unjustly enriched, and she does not overcome any of the several independent grounds for dismissal.

First, Plaintiff's unjust enrichment claim against Meta is barred by Meta's Terms of Service and incorporated policies, which cover the same subject matter as her claim. These Terms and policies expressly advise that Meta may receive and use personal data about users' off-Facebook activity, including about "websites you visit" and "purchases or transactions you make," *i.e.*, the very data at issue here. Plaintiff does not dispute that she agreed to the Terms or that they are valid, and her argument that the Terms require greater specificity to cover her claim has been repeatedly rejected by courts in this Circuit.

Second, Plaintiff does not argue that Meta obtained data about her "wrongfully," and she otherwise fails to articulate a viable theory of third-party unjust enrichment under the framework established by *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989).

Third, any connection between the alleged detriment Plaintiff claims to have suffered—Nebula's disclosure of certain data about her—and Meta's ad revenues is too attenuated to support recovery, and her effort to distinguish recent case law rejecting a virtually identical theory is unpersuasive. Plaintiff's attempt to force Meta to disgorge legitimate ad revenues is not an equitable result consistent with the unjust enrichment doctrine under Illinois law.

Fourth, Plaintiff does not address Meta's arguments that there is nothing unfair about Meta's retention of revenues it legitimately earned or data about Plaintiff that she consented to

Meta receiving, thereby conceding the point and thus her claim. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("a party waives an argument by failing to make it before the district court," including "an argument establishing that dismissal is inappropriate").

Fifth, Plaintiff still fails to specify whether California or Illinois law governs her unjust enrichment claim. And significantly, she does not address, let alone refute, the proposition that if California law applies—and she forfeited any argument that it does not by not addressing the issue in the Opposition—her claim is time-barred.

Because none of these defects is curable by amendment, the Court should dismiss with prejudice Plaintiff's claim against Meta.

## ARGUMENT

### A. Plaintiff's Express Contract With Meta Covers The Same "Subject Matter" As, And Therefore Defeats, Her Unjust Enrichment Claim

Plaintiff does not dispute that she agreed to and is bound by Meta's Terms of Service, which incorporate its Data, Privacy, and Cookies Policies.[1] Nor does Plaintiff dispute that her unjust enrichment claim is foreclosed as a matter of law if those Terms cover the same "subject matter" as her unjust enrichment claim.

As Meta explained (Mot. at 8-9), the Terms indisputably do cover that subject matter, as they expressly address Meta's receipt of data about users' off-Facebook activity and the possibility that such data may be used for ads. *See* Exs. 1-12. For example, Meta's Terms disclose that Meta "use[s] your personal data to help determine which ads to show you." Ex. 9 at 1. And Meta's Terms link to its Privacy Policy, which similarly disclose that "developers … send [Meta] information through Meta Business Tools" about users' "activities … off Facebook"—such as data

[1] Plaintiff does not oppose Meta's request for judicial notice or incorporation by reference (Dkt. 46). For all the reasons set out in Meta's request and the fact that Plaintiff does not oppose their introduction, the Court may properly consider Exhibits 1-19 in connection with resolving Meta's Motion.

about "[w]ebsites you visit," "cookie data, like through … the Meta Pixel," and "purchases or transactions you make"—and that Meta may use this data to match to user accounts and serve ads. Ex. 1 at 2; Ex. 2 at 3; Ex. 3 at 7; Ex. 4 at 7. Plaintiff's contract with Meta governing the same subject matter of her claim here compels dismissal. *See Utility Audit, Inc. v. Horace Mann Serv. Grp.*, 383 F.3d 683, 689 (7th Cir. 2004) (affirming dismissal of claim whose "subject matter" was covered by the parties' contract).

Plaintiff's only response (Opp. at 13) is to fault Meta's Terms for not *specifically* enumerating every possible type of off-Facebook activity data that might be collected and used or *specifically* stating that such data may include "genetic information."[2] But the "subject matter" test under Illinois law does not demand that level of specificity, and thus does not require a contract to "contain[] terms or provisions" regarding the *exact* issue on which a plaintiff bases their unjust enrichment claim. *Id.* at 698 (affirming dismissal where, "*despite the absence of specific terms*, the subject matter of the contract clearly encompasses the work" plaintiff did for defendant) (emphasis added); *Buschauer v. Columbia Coll. Chicago*, 579 F. Supp. 3d 1045, 1050 (N.D. Ill. 2022) (holding that contract governing parties' "financial relationship" foreclosed unjust enrichment claim even where contract did "not address the *specific* subject matter [plaintiff] raise[d] in his unjust enrichment claim") (emphasis added). So too here: the "genetic information" at issue is data about Plaintiff's off-Facebook purchases and registrations. Meta's Terms expressly

[2] Plaintiff accuses Meta of using a "dismissive mischaracterization" of the data Nebula sent to Meta as "Nebula purchase and registration data" as opposed to "genetic information." Opp. at 10, 13. Meta's description is not dismissive; rather, it is accurate, as it tracks Plaintiff's allegations about what Nebula shared with Meta through its Pixel, as opposed to what she alleges was shared with *other defendants* through their technologies. *See* Dkt. 1 ¶ 48 ("Nebula programmed the Facebook pixel to collect and transmit to Meta certain information about the online conduct of consumers on its website, including information regarding consumer's *purchases and registrations* of genetic testing kits.") (emphasis added); *id*. ¶¶ 50-51 (specifying that purchases and registrations were the two events for which Nebula shared data with Meta).

cover the collection and use of off-Facebook data about users—including their "purchases or other transactions"—for matching and advertising purposes, Ex. 3 at 7, thereby foreclosing her claim.

The Ninth Circuit in *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018), rejected a similar attempt to parse Meta's Terms. In *Smith*, the plaintiffs sued Meta for violations of federal and California privacy law based on the installation of Meta's Pixel on health-related websites. Defendants moved to dismiss on the grounds that plaintiffs consented to the collection and use of this data based on Meta's Terms and incorporated policies. *Id.* at 8. The plaintiffs there—like Plaintiff here—did not argue that the Terms did not apply to them. *Id.* Instead, the plaintiffs argued that "though they gave general consent to Facebook's data tracking and collection practices—they did not consent to health-related data," which they argued should be treated differently than other types of data. *Id.* at 9. The Ninth Circuit disagreed, holding that "the practice complained of falls within the scope of Plaintiffs' consent to Facebook's Terms and Policies." *Id.* As the Ninth Circuit explained, "[a] reasonable person viewing those disclosures would understand that Facebook … collect[s] its users' data from third-party sites and [] later use[s] the data for advertising purposes," which "constitutes Plaintiffs' consent." *Id.* The same result obtains here: Plaintiff's claim is covered by the scope of Meta's Terms, which address the same subject matter.

Plaintiff also argues—without citation to authority—that her contract with Meta does not cover the same "subject matter" as her unjust enrichment claim because Meta tells website owners not to send it "sensitive" data, such as health data, as part of *separate* contracts Meta has with those website owners. Opp. at 13-14. Setting aside whether purchase and registration information is sensitive, what Meta includes in its contracts with *others* does not change the fact that *Plaintiff's* contract with Meta covers the same "subject matter"—collection and use of data about her off-Facebook activity—as her unjust enrichment claim. *See Ne. Ill. Reg. Commuter R.R. Corp. v.*

*Judlau Cont., Inc.*, 724 F. Supp. 3d 721, 735 (N.D. Ill. 2024) (enforcing contract as written and refusing to rewrite its terms because "[t]he rights of parties to a contract are limited by the terms expressed in the contract") (citation omitted).

### B. Plaintiff Does Not Plead A Viable Theory Of Third-Party Unjust Enrichment

Plaintiff's Opposition confirms that her claim against Meta is based on *Nebula's* unlawful conduct—not Meta's.[3] Plaintiff does not dispute that she must plead one of the three disjunctive *HPI* requirements to recover in unjust enrichment a benefit transferred from Nebula to Meta: (1) that Nebula "mistakenly" sent this data to Meta; (2) that Meta obtained this data through "wrongful conduct"; or (3) that she has "a better claim to the benefit" than Meta. *HPI*, 545 N.E.2d at 679. Plaintiff also does not dispute that regardless of which of these theories she attempts to invoke, she must also allege that she—rather than Meta—is entitled to the ad proceeds she seeks to disgorge. *See Hollinger Int'l, Inc. v. Hollinger, Inc.*, 2006 WL 3827326, at *3 (N.D. Ill. Dec. 27, 2006). Plaintiff's unjust enrichment claim should be dismissed because she is not entitled to those proceeds and in fact abandoned any argument that she is. *See G&S Holdings*, 697 F.3d at 538 (7th Cir. 2012). And her claim independently fails because she does not dispute, and thus concedes, that Meta did not obtain this data wrongfully, and because her explanations for why the claim survives under the "mistake" and "better claim" prongs are wrong.

**<u>1. Entitlement to Meta's Ad Revenues.</u>** Plaintiff does not—and cannot—plausibly allege that she is entitled to the ad proceeds she wants Meta to disgorge. *See* Dkt. 1 ¶¶ 133-34.[4] Unjust

[3] Unjust enrichment is not a standalone claim and instead must be based on some "unlawful or improper conduct as defined by law." *Solar Micronics, Inc. v. Reddy*, 2023 WL 4564566, at *6 (N.D. Ill. July 17, 2023). For that reason, the claim against Meta must be dismissed if the underlying GIPA claim is dismissed. *See* Mot. at 6-7. Plaintiff cites no authority that would allow her claim against Meta to survive without any independently unlawful conduct.

[4] Nor can Plaintiff avoid this result by trying to recast the benefit as "the value of her genetic information." Opp. at 9. As explained below, she nowhere identifies any intrinsic monetary value of this data. Instead, it is clear—and Plaintiff does not deny—that she seeks disgorgement of Meta's ad revenues.

enrichment exists to "recover[] something that the defendant is not entitled to but is unfairly possessing to the plaintiff's detriment." *Brinley Holdings, Inc. v. Husch Blackwell LLP*, 2022 WL 80271, at *7 (N.D. Ill. Jan. 7, 2022). It "is not applicable where 'plaintiff is attempting to recover money to which it is not entitled.'" *Hollinger*, 2006 WL 3827326, at *4 (dismissing third-party unjust enrichment claim to recover newspapers in which plaintiff had no ownership interest) (quoting *Asch v. Teller, Levit & Silvertrust, P.C.*, 2003 WL 22232801, at *7 (N.D. Ill. Sept. 26, 2003) ("The court cannot conclude that the Illinois Supreme Court intended to create a claim for unjust enrichment where a plaintiff claims damages that rightfully belong to a third party.")).

Here, Meta lawfully earned its ad revenues from third-party advertisers who paid Meta in exchange for serving their ads on Meta's platforms. *See* Mot. at 12-13. Plaintiff does not address this argument or otherwise explain why *she* is nonetheless "entitled to the[se] advertising fees." *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1234 (N.D. Ill. Aug. 29, 2005) (dismissing on these grounds); *see also Ass'n Benefit Servs., Inc. v. Advanceps Holding Corp.*, 2004 WL 2101928, at *3 (N.D. Ill. Sept. 21, 2004) (dismissing claim where "ABS has no claim on money given to AdvancePCS by a third party to which ABS is not entitled"). For this reason alone, her claim should be dismissed.

**2. Mistake.** Plaintiff also cannot plead a mistake theory, as she concedes that "Nebula *intentionally* installed the Meta Pixel … and in so doing disclosed to Meta … Plaintiff's genetic information." Opp. at 9 (emphasis added). Plaintiff tries to avoid the consequences of this concession by arguing that she adequately pleaded in the alternative that Nebula "mistakenly" shared data with Meta by virtue of her alleging that Nebula may have been "negligent." *Id.* (citing Dkt. 1 ¶ 123). In support, Plaintiff asserts that although Nebula transmitted this data to Meta, it

"remains to be seen" whether this transmission was "intentional, reckless or negligent." *Id*. at 10. This argument is foreclosed by the law and Plaintiff's express allegations to the contrary.

Plaintiff cannot survive dismissal based on theories that "remain[] to be seen." Hornbook law holds that a plaintiff does not get past the pleading stage *unless and until* she pleads a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("[I]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (the purpose of pleading standards is to ensure that the plaintiff has "earn[ed] the right to engage in discovery"). The mere allegation that Nebula *may have* acted "negligently" (or recklessly, or intentionally) does not entitle plaintiff to get to discovery on that theory.

Plaintiff's allegations do not give rise to a plausible inference that Nebula transmitted her data to Meta by "mistake." To establish a "mistake," "a plaintiff must point to some *unintentional* act arising from ignorance, surprise, or misplaced confidence." *Pelfresne v. Vill. of Lindenhurst*, 2005 WL 2322228, at *12 (N.D. Ill. Sept. 16, 2005) (emphasis added). But beyond the threadbare allegation the Nebula may have acted "negligently"—a legal conclusion that the Court need not accept, *see Iqbal*, 556 U.S. at 678—Plaintiff fails to identify a single factual allegation in her Complaint that would support the theory that Nebula unintentionally sent data about her to Meta.

To the contrary, the only plausible inference arising from Plaintiff's factual allegations is that Nebula "knew" what it was sending to Meta and "approved" of Meta's practices. *Pelfresne*, 2005 WL 2322228, at *12 (finding no "mistake" where a party "knew about and approved of" the challenged practice). Plaintiff alleges that "Nebula *programmed* the Facebook pixel to collect and transmit to Meta … information regarding consumers' purchases and registrations of genetic testing kits"—the data at issue here. Dkt. 1 ¶ 48 (emphasis added). Plaintiff also alleges that

Nebula "knows" that Meta can use this data for matching and advertising-related purposes, and in fact, that is one of the reasons why "[b]usinesses, including Nebula," download the Pixel. *Id.* ¶¶ 34, 42, 46. Indeed, Nebula confirms as much in its Cookie Policy, which discloses that it uses the Facebook Pixel for advertising and analytics purposes and tells users that, through this technology, Meta "may collect information about [users'] online activities over time and across different websites or online services." Ex. 15 at 2-3. These allegations of Nebula's knowing and intentional conduct render implausible Plaintiff's conclusory allegation that Nebula shared data about her negligently or mistakenly. *See Driscoll Firm, P.C. v. Fed. City Law Grp., PLLC*, 2023 WL 2375218, at *11 (N.D. Ill. Mar. 6, 2023) (dismissing negligence-based claim contradicted by allegations of intentional conduct elsewhere in complaint). Plaintiff therefore does not plead a plausible third-party unjust enrichment claim against Meta based on a theory of "mistake."

**3. Better Claim.** Plaintiff also fails to plead third-party unjust enrichment based on *HPI*'s third prong, which asks whether a plaintiff has a "better claim [than the defendant] to the benefit." *HPI*, 545 N.E.2d at 162. The benefit that Plaintiff seeks to disgorge from Meta is either (a) the ad revenues Meta allegedly generated as a result of Nebula sending it data about her purchases and registrations or (b) the data itself. *See* Opp. at 9. But as Meta explained previously (Mot. at 12-13) and above, Plaintiff has no claim whatsoever to Meta's ad revenues, let alone a "better claim" than Meta. And Plaintiff's argument that she has a "better claim" than Meta to the data about her purchases and registrations is foreclosed by her consent to Meta's Terms, which disclose that Meta may receive this information, match it to users, and use it to serve ads (though Plaintiff does not actually allege she received any ads based on this data). Mot. at 14.

Beginning with the argument that Plaintiff has a "better claim" to Meta's ad revenues, Plaintiff contends—without citation to authority—that data about her has "inherent" value because

the General Assembly saw fit to protect it under GIPA. That argument fails, as courts repeatedly reject the proposition that an individual's personal data has any independent monetary value. *See Brown v. State Farm Mut. Auto. Ins. Co.*, 2025 WL 81340, at *8-9 (N.D. Ill. Jan. 13, 2025) (dismissing unjust enrichment claim based on disclosure of personal health information on the ground that the information lacked independent monetary value) (citing *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (collecting cases)); *see also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015) (holding that although California and Illinois enacted data breach statutes, "loss of [plaintiffs'] private information" was too abstract an injury to confer Article III standing). Plaintiff cites not a single Illinois case supporting the proposition that data subject to GIPA should be treated differently than other types of personal data. But even if that issue were an open question, Seventh Circuit precedent holds that the question must be resolved in Meta's favor. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635-36 (7th Cir. 2007) (holding that "[w]ithout state authority to guide us, 'when given a choice between an interpretation of state law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower" path, and declining to interpret state data privacy law expansively to create a private right of action) (collecting cases) (cleaned up).[5] And as Meta explained (Mot. at 13-14), to the extent purchase and registration data about Plaintiff has any value that could be disgorged, *Meta* created that value. *See, e.g.*, *Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 853 (N.D. Ill. 2024) (holding that plaintiffs did not have a "better claim" to the value of data that defendants created).

[5] The Court need not resolve the question whether genetic data *ever* has inherent monetary value, as that question is not presented here. Plaintiff's claim against Meta concerns not her genetic sequence or code, but rather information—which she agreed that Nebula could share with Meta—showing that she purchased a genetic test and registered it with Nebula. Plaintiff does even not allege that Meta served her any Nebula ads based on this data. Under these circumstances, data regarding her Nebula registration and purchase has no independent monetary value for purposes of Illinois unjust enrichment law.

Plaintiff next argues that she has a "better claim" to the purchase and registration data itself, but this argument is foreclosed by Plaintiff's consent to Meta's receipt and use of this data. Mot. at 3-4, 12, 14; *see also Hatcher v. Hatcher*, 158 N.E.3d 326, 331 (Ill. App. 2020) (holding that plaintiffs did not have a "better claim" to funds that were given to the defendant consistent with trustee's authority). Plaintiff does not engage with this argument either, thus forfeiting it.

**C. Plaintiff Has Not Suffered A Detriment Connected To Meta's Alleged Benefit**

Plaintiff does not overcome her failure to plead a "detriment" and "a connection between the detriment and the defendant's retention of the benefit," which requires pleading that Meta "unjustly retained a benefit *to [plaintiff's] detriment*." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 518-19 (7th Cir. 2011) (emphasis added); *see* Mot. at 15-16. This failure is another independent reason to dismiss.

Plaintiff identifies "the disclosure of her [genetic information] to large technology companies" as her alleged detriment. Opp. at 12. But that information is not the "benefit" she seeks to disgorge from Meta. Instead, she seeks to disgorge Meta's ad revenues. *See id.* ("[T]he inclusion of Plaintiff's and Class Members' genetic information in their profiles adds tremendous value to the ads sold by Meta, Microsoft, and Google, and confers a benefit on those Defendants by enabling them to sell more ads for more money.") (quoting Dkt. 1 ¶ 131). According to Plaintiff, this detriment "is directly connected to those very companies' retention and monetization of that data," thereby giving rise to a viable claim. *See id.* at 12-13.

Plaintiff's theory, which is entirely non-specific to the use of *her* data to generate this alleged value, is "too attenuated" to state an unjust enrichment claim. *Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *8 (N.D. Ill. Mar. 30, 2022). In *Hogan*, Judge Leinenweber flatly rejected a virtually identical theory. There, the alleged detriment to the plaintiffs was "Amazon's violation of BIPA to collect [their] biometric information," and the alleged benefit to Amazon was its

"profits from its sale of [facial recognition] technology" that purportedly used the plaintiff's information. *Id.* In dismissing the plaintiffs' unjust enrichment claim, Judge Leinenweber held that this theory failed to "allege that retention of Plaintiffs' data *specifically enriched* Amazon." *Id*. (emphasis added); *see also Melzer v. Johnson & Johnson Consumer Inc.*, 2023 WL 3098633, at *7 (D.N.J. Apr. 26, 2023) (applying Illinois law and dismissing unjust enrichment claim where plaintiff failed "to sufficiently allege that the retention of [her] data 'specifically enriched'" defendant). So too here: Plaintiff here does not plausibly allege how data about *her* Nebula purchase and registrations—as opposed to data about other users, or Meta's own actions in creating its advertising products—specifically enriched Meta and allowed it to "sell more ads for more money." Dkt. 1 ¶ 131.

Plaintiff's attempt to distinguish *Hogan* is unpersuasive. According to Plaintiff, while the "plaintiffs [there] did not allege how their specific facial images added value to the defendant's facial recognition training program," she alleges here that "through [their cookies], each Moving Defendant has specifically compiled data on Plaintiff and Class Members which is unique to each of them, enabling Moving Defendants to market their targeted advertising to their customers." Opp. at 13. But in *Hogan*, as here, the plaintiffs' increased-value-to-defendant theory was similarly based on the collection of data specific to the plaintiffs. That theory was a non-starter in *Hogan* because it failed to connect that data to any incremental value or profit that Amazon was able to command as a result of the plaintiff-*specific* data, as opposed to other people's data or Amazon's own actions. *See Hogan*, 2022 WL 952763, at *8 ("Even if Amazon was using Plaintiff's images to train [the technology], Plaintiffs fail to allege how their specific images made [the technology] more valuable or profitable to Amazon."). The same failing dooms Plaintiff's theory here.

More fundamentally, Plaintiff's theory fails because it does not explain how Meta's retention of its ad proceeds is "to [her] detriment." *Cleary*, 656 F.3d at 518. As Meta explained previously (Mot. at 14, 16) and above, it is entitled to retain ad revenues it legitimately earned from advertisers who paid it for serving their ads. Plaintiff does not explain why Meta's continued retention of those revenues is to her detriment. *See Cleary,* 656 F.3d at 519-20 (dismissing unjust enrichment claim where plaintiff failed to explain how defendants' "continued retention" of consumers' money paid for defendants' products was to consumers' detriment); *Brinley*, 2022 WL 80271, at *7 (dismissing unjust enrichment claim where plaintiff failed to allege that defendant's retention of fees paid by others "has somehow harmed Plaintiffs"). And even if the claimed benefit is the data itself, *see* Opp. at 9, Plaintiff does not argue that Meta's alleged receipt or use of the data has *deprived* her of the data, much less that Meta's retention thereof has deprived her of any hypothetical value in it or ability to monetize it. In fact, she expressly disclaims such an allegation. *See id.* at 11.

Accordingly, Plaintiff's claim against Meta should be dismissed for failure to plead a detriment connected to Meta's retention of any benefit.

**D. Meta's Retention Of Any Benefit Is Not "Unjust"**

Plaintiff's claim independently fails because she does not allege how Meta's retention of data about her purchases and registrations or its advertising revenues "violates justice, equity, and good conscience." *Ass'n Benefit Servs.*, 2004 WL 2101928, at *3; *see* Mot. at 16-17. As the Seventh Circuit explained, "[u]njust enrichment is not a mode of imposing punitive damages; it is a means of recovering something that the defendant is not entitled to but is *unfairly* possessing to the plaintiff's detriment." *Cleary*, 656 F.2d at 520 (emphasis added); *see also Hogan*, 2022 WL 952763, at *8 (similar).

Plaintiff weakly argues that she satisfies this element because "it would be unjust for Moving Defendants to retain any benefit conferred upon them by virtue of the unlawful disclosure of Plaintiff's genetic information." Opp. at 12. For this proposition, she cites Paragraph 132 of the Complaint—but that is just a threadbare recitation of the element, not a well-pleaded factual allegation explaining how Meta's retention of any benefit is actually "unjust." *See Iqbal*, 556 U.S. at 678. And Plaintiff could not plausibly plead any such facts because Meta's retention of any benefit here is not unjust. For the reasons Meta explained previously (Mot. at 16-17) and restated below, Meta is not "unfairly possessing" data about Plaintiff or keeping the ad proceeds that she seeks to disgorge. *Cleary*, 656 F.2d at 520. Plaintiff does not engage with *any* of these arguments, thus conceding them.

First, while Plaintiff alleges that Nebula unlawfully disclosed her data to Meta, *see* Dkt. 1 ¶¶ 26, 117-25, she now concedes that Meta has not engaged in any wrongful conduct in receiving it, *see* Opp. at 8-9. Because Meta was not responsible for Nebula's actions in programming the Pixel to send this data—in fact, to the extent Nebula sent any protected information to Meta without a lawful basis, Nebula's doing so violated Meta's Business Tools Terms, Ex. 11 at 1—Meta's retention of this data is not unjust. *See Aiello v. Invision Mktg. Sols.*, 2019 WL 1875354, at *2 (N.D. Ill. Apr. 26, 2019) (dismissing unjust enrichment claim where defendant was not at fault for third-party actions giving rise to the claim).

Second, Plaintiff expressly consented to Meta's receipt and use of this data. Plaintiff does not dispute that she agreed to Meta's Terms and incorporated policies, which—as explained above and previously (Mot. at 3-4, 17)—tell Facebook users like Plaintiff that Meta may receive data about their off-Facebook activities and use that data to serve them ads. The scope of this consent covers the off-Facebook data at issue here. *See supra* at Section A; *Smith*, 745 F. App'x at 9

(holding that plaintiffs' consent to Meta's Terms, which disclosed Meta's off-Facebook "data tracking and collection practices," manifested their consent to Meta's receipt and use of "health-related data"). Because Plaintiff "allowed [Meta] the privilege" of receiving and using data about her purchases and registrations, Meta's retention and use of it cannot be unjust. *Plesnik v. Big Lots Stores*, 2014 WL 2024966, at *3 (S.D. Ill. May 16, 2014).

Third, as Plaintiff does not dispute, Meta lawfully and legitimately earned the ad revenues that she asks the Court to disgorge. As Meta explained (Mot. at 16), there is therefore nothing inequitable about Meta's retention of these revenues.

### E. Plaintiff Does Not Dispute That Her Claim Fails Under California Law

Plaintiff ignores Meta's arguments that her claim is time-barred if governed by California law. *See* Mot. at 17-18 (showing that because her claim accrued prior to October 10, 2022, it is time-barred under California law). In fact, Plaintiff does not even address whether her claim is governed by Illinois or California law. Thus, Plaintiff forfeited any argument that her claim against Meta is *not* governed by California law—and thus time-barred. *See G&S Holdings*, 697 F.3d at 538. This provides another independent ground for dismissing her claim against Meta. *See McNeil v. Salvation Army*, 754 F. App'x 469, 471 (7th Cir. 2019) (affirming dismissal of "hopelessly time-barred" claims).

## CONCLUSION

Plaintiff's claim against Meta should be dismissed with prejudice.

Dated: March 6, 2025

Respectfully submitted,

/s/ *Gary Feinerman*
Gary Feinerman

Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com

Melanie M. Blunschi (*pro hac vice*)
Catherine A. Rizzoni (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
melanie.blunschi@lw.com
cat.rizzoni@lw.com

*Attorneys for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 6, 2025, a true and accurate copy of the foregoing was electronically filed with the CM/ECF system of the United States District Court for the Northern District of Illinois, which sends notice to counsel of record via e-mail.

Dated: March 6, 2025

s/ *Gary Feinerman*
Gary Feinerman, One of the Attorneys for
Defendant Meta Platforms, Inc,

Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com