**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTOINETTE PORTILLO, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>NEBULA GENOMICS, INC., a Delaware Corporation, META PLATFORMS, INC., a Delaware Corporation, MICROSOFT CORPORATION, a Washington Corporation, and GOOGLE LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No. 1:24-cv-09894<br><br>Hon. Jeffrey I. Cummings |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ....1

ARGUMENT ....2

I. PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION. ....2

A. Plaintiff Concedes the Absence of General Jurisdiction....2

B. Plaintiff Cannot Establish Specific Jurisdiction. ....2

1. Rather Than Defend Her Bare-Bones Jurisdictional Pleading, Plaintiff Tries to Supplement It....4

2. Plaintiff Cannot Show Purposeful Availment....5

3. Plaintiff Cannot Substitute Nebula's or Her Own Contacts to Show that Her Claim Arises Out of Google's Forum-Related Conduct....7

4. Exercising Jurisdiction Over Google Would Not Comport with Traditional Notions of Fair Play and Substantial Justice....8

II. PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT. ....8

A. Plaintiff's Claim Against Google Cannot Rest on Nebula's Wrongful Conduct. ....8

B. Plaintiff Fails to State a Claim for Unjust Enrichment Under *HPI*. ....10

1. Plaintiff's Claim for Unjust Enrichment Based on Mistake Fails. 10

2. Plaintiff Lacks a Better Claim to the Value of Her Data. ....11

C. Plaintiff Fails to Plead the Other Elements of Her Unjust-Enrichment Claim. ....13

CONCLUSION ....15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*,
2013 WL 594298 (N.D. Cal. Feb. 14, 2013) ....................9

*Aiello v. Invision Mktg. Sols.*,
2019 WL 1875354 (N.D. Ill. Apr. 26, 2019) ....................15

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ....................12

*Asahi Metal Indus. Co., Ltd. v. Super Ct.*,
480 U.S. 102 (1987) ....................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) ....................10

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ....................9

*Bovay v. Sears, Roebuck & Co.*,
2017 WL 660595 (Ill. App. Ct. Jan. 6, 2017) ....................11

*Brantley v. Prisma Labs, Inc.*,
2024 WL 3673727 (N.D. Ill. Aug. 6, 2024) .................... *passim*

*Brinley Holdings, Inc. v. Husch Blackwell LLP*,
2022 WL 80271 (N.D. Ill. Jan. 7, 2022) ....................15

*Bristol-Myers Squibb Co. v. Super. Ct.*,
582 U.S. 255 (2017) ....................7

*Cleary v. Philip Morris, Inc.*,
656 F.3d 511 (7th Cir. 2011) ....................8, 9, 13, 15

*Cohen v. Kering Ams., Inc.*,
2024 WL 4534988 (N.D. Ill. Oct. 21, 2024) ....................5

*Corley v. Vance*,
365 F. Supp. 3d 407 (S.D.N.Y. 2019) ....................2

*CyWee Grp. Ltd. v. Google LLC*,
2021 WL 2425999 (W.D. Tex. Feb. 17, 2021) ....2

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. Sept. 4, 2020) ....12

*Dwyer v. Am. Express Co.*,
652 N.E.2d 1351 (Ill. App. Ct. 1995) ....12

*Dzananovic v. Bumble*,
2023 WL 4405833 (N.D. Ill. July 7, 2023) ....6

*GCIU-Emp. Ret. Fund v. Goldfarb Corp.*,
565 F.3d 1018 (7th Cir. 2009) ....4

*Georgalis v. Facebook, Inc.*,
324 F. Supp. 3d 955 (N.D. Ohio 2018) ....2

*Godwin v. CPF River Oaks Austin, LLC*,
2024 WL 2732670 (W.D. Tex. May 28, 2024) ....2

*Google LLC v. State of Tex.*,
2025 WL 52611 (Tex. Ct. App. Jan. 9, 2025) ....2

*Gullen v. Facebook.com, Inc.*,
2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ....3

*Hamilton Glass Co. v. Shaffer*,
139 N.E.2d 799 (Ill. 1957) ....11

*Harrison v. Facebook, Inc.*,
2019 WL 1102210 (S.D. Ala. Mar. 8, 2019) ....2

*Hayes Mech., Inc. v. First Indus. L.P.*,
812 N.E.2d 419 (Ill. App. Ct. 2004) ....15

*Hogan v. Amazon.com, Inc.*,
2022 WL 952763 (N.D. Ill. Mar. 30, 2022) ....13, 14

*Hollinger Int'l, Inc. v. Hollinger, Inc.*,
2006 WL 3827326 (N.D. Ill. Dec. 27, 2006) ....11, 12

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) ....10, 11

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....13

*Letoski v. Coca-Cola Co.*,
2024 WL 4476120 (N.D. Ill. Oct. 11, 2024)....................9

*Lyons Lumber & Bldg. Ctr., Inc. v. 7722 N. Ashland, LLC*,
59 N.E.3d 830 (Ill. App. Ct. 2016)....................14

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,
20 F.4th 311 (7th Cir. 2021)....................9

*Matlin v. Spin Master Corp.*,
921 F.3d 701 (7th Cir. 2019)....................3, 4

*McGoveran v. Amazon Web Servs., Inc.*,
488 F. Supp. 3d 714 (S.D. Ill. 2020)....................3, 8

*N. Grain Mktg., LLC v. Greving*,
743 F.3d 487 (7th Cir. 2014)....................2, 7, 8

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003)....................4

*Ralls v. Facebook*,
221 F. Supp. 3d 1237 (W.D. Wash. 2016)....................2

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024)....................9, 10, 12

*RAR, Inc. v. Turner Diesel, Ltd.*,
107 F.3d 1272 (7th Cir. 1997)....................4

*Remijas v. Neiman Marcus Grp.*,
794 F.3d 688 (7th Cir. 2015)....................12

*Roper v. Rise Interactive Media & Analytics, LLC*,
2023 WL 7410641 (N.D. Ill. Nov. 9, 2023)....................12

*Saletech, LLC v. E. Balt, Inc.*,
20 N.E.3d 796 (Ill. App. Ct. 2014)....................15

*Salkauskaite v. Sephora USA, Inc.*,
2020 WL 2796122 (N.D. Ill. May 30, 2020)....................7

*Shebesh v. Geneanet, S.A.*,
2024 WL 2019447 (N.D. Ill. May 3, 2024)....................2

*Slowinski v. BlueTriton Brands, Inc.*,
744 F. Supp. 3d 867 (N.D. Ill. 2024)....................9

*Solar Micronics, Inc. v. Reddy*,
2023 WL 4564566 (N.D. Ill. July 17, 2023) ....................9

*Sotelo v. DirectRevenue, LLC*,
384 F. Supp. 2d 1219 (N.D. Ill. 2005) ....................15

*Toulon v. Cont'l Cas. Co.*,
877 F.3d 725 (7th Cir. 2017) ....................9

*uBid v. GoDaddy*,
623 F.3d 421 (7th Cir. 2010) ....................6

*Village of Rockton v. Sonoco Products Co.*,
135 F. Supp. 3d 700 (N.D. Ill. 2015) ....................11

*Walden v. Fiore*,
571 U.S. 277 (2014) ....................8

**Statutes**

410 ILCS 513/1, *et seq.* ....................10

**Court Rules**

Rule 12(b)(2) ....................2

**Other Authorities**

Genetic Information Privacy Act (GIPA) .................... *passim*

## INTRODUCTION

Plaintiff's Opposition confirms that her unjust-enrichment claim is not only meritless but also a blatant attempt to avoid GIPA's extraterritorial limits and hold Google liable for a third party's alleged misconduct. Acknowledging that Illinois does not recognize unjust enrichment as a standalone claim, Plaintiff advances the novel theory that her GIPA claim against Nebula can prop up her unjust-enrichment claim against Google. This defies logic and would be an unprecedented expansion of the law. Google's liability for unjust enrichment cannot turn on Nebula's liability under GIPA. Plaintiff's claim also fails in the absence of allegations or authority showing that she is entitled to recover advertising profits that Google legitimately earned.

But the Court need not even reach the merits of Plaintiff's claim because her Opposition demonstrates that she cannot meet her burden to establish personal jurisdiction. Conceding that general jurisdiction is lacking, Plaintiff argues that Google is subject to specific jurisdiction because Google's products and services are "ubiquitous[]" and, therefore, Google should reasonably anticipate being haled into court everywhere. ECF No. 66 ("Opp.") at 14. To accept Plaintiff's reasoning would, in addition to ignoring Supreme Court precedent, relieve Plaintiff of her burden to show that her injury "arises out of" Google's activities in or directed at the forum—a core element of specific jurisdiction. And Plaintiff falls far short of her burden here. She ignores the substantial authority Google cites, does not meaningfully cite authority of her own, and fails to rebut Google's evidence demonstrating that this Court lacks jurisdiction. Her claim against Google should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION.

#### A. Plaintiff Concedes the Absence of General Jurisdiction.

Plaintiff makes no attempt to argue that Google is "at home" in Illinois; she thus forfeits any argument that Google is subject to the Court's general jurisdiction. *See Shebesh v. Geneanet, S.A.*, 2024 WL 2019447, at *3 (N.D. Ill. May 3, 2024) (failure to argue general jurisdiction in opposition conceded the point).

#### B. Plaintiff Cannot Establish Specific Jurisdiction.

Rather than address head-on Google's arguments under Rule 12(b)(2), Plaintiff derides them as "risible," attempts to distract from the relevant inquiry by focusing on atmospherics like the "market capitalization" of "[Google's] parent company" (a point of fact not alleged in her Complaint, and for which her Opposition cites Wikipedia), and argues that Google should be subject to specific jurisdiction in this forum—and, by extension, in every other forum as well—because "Google's products and services are used ubiquitously throughout the United States and the world."[1] Opp. at 14. Fundamentally, Plaintiff fails to articulate how her claim arises from Google's contacts with the forum—contacts that she bears the burden to identify specifically with plausible allegations of fact. *See, e.g.*, *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (specific jurisdiction requires defendant's "contacts" with forum state to "directly relate

[1] To the extent Plaintiff believes personal jurisdiction over Google can be presumed simply because of the company's size or the success of its products and services, she is incorrect. *See Google LLC v. State of Tex.*, 2025 WL 52611, at *4 (Tex. Ct. App. Jan. 9, 2025) (reversing denial of Google's motion to dismiss for lack of personal jurisdiction); *CyWee Grp. Ltd. v. Google LLC*, 2021 WL 2425999, at *4 (W.D. Tex. Feb. 17, 2021) (granting Google's motion to dismiss for lack of personal jurisdiction); *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 960–61 (N.D. Ohio 2018) (granting motion to dismiss for lack of personal jurisdiction); *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1243–44 (W.D. Wash. 2016) (same); *Godwin v. CPF River Oaks Austin, LLC*, 2024 WL 2732670, at *9 (W.D. Tex. May 28, 2024) (same); *Corley v. Vance*, 365 F. Supp. 3d 407, 434–35 (S.D.N.Y. 2019) (granting Facebook's motion to dismiss where plaintiff failed to allege or argue that his claims—"all of which relate to Facebook's voluntary disclosure of his personal information—arise out of in-state business activity"); *Harrison v. Facebook, Inc.*, 2019 WL 1102210, at *1–2 (S.D. Ala. Mar. 8, 2019) (granting motion to dismiss for lack of specific jurisdiction).

to the challenged conduct or transaction”). She ignores the relevant standard and her burden under it. Her brief amounts to a thumbing of her nose at the law of personal jurisdiction itself.

Plaintiff also makes no effort to distinguish *any* of the authorities relied upon by Google—including *McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714 (S.D. Ill. 2020), where the court held that it lacked specific jurisdiction over the non-resident cloud-computing company Amazon Web Services (“AWS”) because there was no indication that AWS “specifically targeted Illinois citizens when [AWS] provided [its] voiceprinting services to John Hancock,” a Massachusetts-based third party similarly situated to Nebula here. *Id*. at 723. Plaintiff does not even acknowledge this authority, much less try to distinguish it. Plaintiff likewise ignores *Brantley v. Prisma Labs, Inc.*, 2024 WL 3673727 (N.D. Ill. Aug. 6, 2024), where the court held that it lacked specific jurisdiction over a mobile-app developer because “nationwide marketing cannot be a basis to hale [a non-resident defendant] into court in Illinois” where the “[p]laintiff points to no Illinois-targeted marketing.” *Id.* at *7–8; *see also Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (“Because plaintiff does not allege that Facebook targets its alleged biometric collection activities at Illinois residents, the fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook.”); *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (courts “should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates [an interactive] website that is accessible in the forum state”). These cases are squarely on point, and Plaintiff ignores them.

Plaintiff inherently “bear[s] the burden of establishing personal jurisdiction,” but where, as here, “[Defendant[] submit[s] evidence opposing the district court’s exercise of personal jurisdiction,” she must go further: she “must similarly submit affirmative evidence supporting the

court's exercise of jurisdiction." *Id.* at 705; *see also Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (where defendant submits "affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction"). Faced with Google's evidence, Plaintiff offers not a shred of her own. Nor does she object to Google's declarations submitted in support of its Motion (ECF Nos. 52-1 ("Lam Decl."), 52-2) or to the materials submitted in connection with Google's Request for Judicial Notice (ECF No. 53 ("RJN")). Courts "accept as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). The Court should do so here.

**1. Rather Than Defend Her Bare-Bones Jurisdictional Pleading, Plaintiff Tries to Supplement It.**

The entirety of Plaintiff's jurisdictional pleading is set forth in one paragraph of her Complaint, which states:

> This Court has personal jurisdiction over Defendants because: (i) they transact business in this District; (ii) they have substantial aggregate contacts in this District; (iii) they engaged, and continue to engage in, conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in this District. . . . Meta, Microsoft and Google have unjustly benefited from their collection of genetic data from Plaintiff and other Illinois residents as described herein.

Compl. ¶ 13. This legally conclusory boilerplate is inadequate. *See* Mot. at 8–9. It does not inform the Court, or Google, of the specific forum-directed conduct Plaintiff relies upon to support jurisdiction. Plaintiff's allegation that Google "transact[s] business in this District" does not identify any specific business that Google conducts in the District, much less how such business gives rise to her claim. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277–78 (7th Cir. 1997). Nor does her allegation that Google has unspecified "substantial aggregate contacts in this District" move the needle in her favor. *See id.* (court "cannot simply aggregate all of a defendant's

contacts with a state . . . as evidence of the constitutionally-required minimum contacts"). Her allegation that Google's "conduct" had the "effect of causing injury to persons in this District" does not specify how any of Google's conduct caused any injury. Compl. ¶ 13. These are not specific allegations of fact; they are unsupported generalities that fall short of the *Twombly–Iqbal* standard. *See, e.g.*, *Cohen v. Kering Ams., Inc.*, 2024 WL 4534988, at *2 (N.D. Ill. Oct. 21, 2024) (rejecting "boilerplate" allegations as "insufficient" to support jurisdiction); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts need not "accept as true a legal conclusion couched as a factual allegation"). Such paper-thin allegations are indefensible under the applicable standards, which may explain why Plaintiff's Opposition makes no real effort to defend them. *See* Opp. at 14–15.

**2. Plaintiff Cannot Show Purposeful Availment.**

Plaintiff's attempt to amend her pleading through her Opposition should not be countenanced. But in any event, her Opposition's statement that "Google has purposefully availed itself of Illinois law by marketing the products described in the complaint to web site [sic] operators that Google knows will be used by Illinois residents" does not help her. Opp. at 2. For one thing, her Complaint contains zero allegations regarding Google's marketing activities. For another, Plaintiff stops short of suggesting that Google marketed its products to Illinois residents specifically. And, as explained in Google's Motion (Mot. at 8), nationwide marketing, without more, cannot support personal jurisdiction. *See Brantley*, 2024 WL 3673727, at *7 ("Prisma's nationwide marketing cannot be a basis to hale Prisma into Court in Illinois—Plaintiff points to no Illinois-targeted marketing."); *Matlin*, 921 F.3d at 706. That Google's "parent company is among the top 5 largest companies in the country" does not help Plaintiff either. Opp. at 14. It does not show any Illinois-specific conduct, even putting aside the (dispositive) issue that it does not appear in her Complaint. Opp. at 14; *see Brantley*, 2024 WL 3673727, at *7 (rejecting argument that defendant's app "generated $40 million in revenue" as irrelevant to defendant's forum-related

activities). And finally, although Plaintiff accuses Google of receiving her genetic information and using it to enhance a "profile" about her, she does not allege that Google's conduct occurred in or was specifically directed at Illinois. *See* Compl. ¶¶ 92–105, 128–34.

The Opposition stakes Plaintiff's jurisdictional claim on only two authorities, cited without analysis, which do not advance her case. *See* Opp. at 15. In *uBid v. GoDaddy*, GoDaddy maintained physical billboards in quintessentially Illinois venues, such as at "the home ballparks of the Chicago Cubs and White Sox" and "at the Chicagoland Speedway," advertising the domain-registration services out of which the complaint arose. 623 F.3d 421, 424 (7th Cir. 2010). Given GoDaddy's extensive marketing in the forum and the substantial nexus between GoDaddy's forum contacts and the harm alleged, the Seventh Circuit held that the district court could exercise personal jurisdiction. *Id.* at 429–32. No similar nexus is alleged here. The Complaint is devoid of allegations about Google's marketing activities; as alleged by Plaintiff, her injury arises not from any marketing by Google but from Nebula's alleged use of Google's product in a different state.

Plaintiff is on even weaker footing in relying on *Dzananovic v. Bumble,* There, the plaintiff, an Illinois resident who used the defendant's app, was the defendant's customer. 2023 WL 4405833, at *3 (N.D. Ill. July 7, 2023). Plaintiff, by contrast, alleges that she is Google's *customer's user*. And, whereas the defendant in *Bumble* advertised the app giving rise to the plaintiff's claims "on physical billboards in Chicago" and "employed campus ambassadors at universities in Chicago to market and promote the app on their campuses," *Id.* at *4, there are no similar allegations here.

Further, the ubiquity of a product or service is not enough for personal jurisdiction. Plaintiff argues that because Google Analytics and Google Tag Manager are used by millions of websites and apps, some of which happen to be in Illinois, Google "unequivocally" should "expect to be

hauled into court in Illinois" by its customers' users. Opp. at 15. In other words, by placing its products into the stream of commerce and marketing them widely, Plaintiff contends, Google has "purposefully directed" its activities at Illinois. The Supreme Court disagrees: "[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co., Ltd. v. Super Ct.*, 480 U.S. 102, 112 (1987); *see also Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 264 (2017) ("Even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). Google could not reasonably have anticipated being haled into court in Illinois based on the activities of its customer, Nebula, which is located outside of Illinois.

#### 3. Plaintiff Cannot Substitute Nebula's or Her Own Contacts to Show that Her Claim Arises Out of Google's Forum-Related Conduct.

For specific jurisdiction to exist, Plaintiff's injury must "arise out of" Google's contacts with Illinois. *N. Grain Mktg.*, 743 F.3d at 492. Nonetheless, Plaintiff seeks to rely on *Nebula's* contacts with Illinois, or on her own contacts as a resident, to show that her claim arises from Google's forum contacts. *See* Opp. at 14–15. Plaintiff argues that "a website operator's use of [Google's] analytics tools that collect information from Illinois residents" puts Google on notice that it may be subject to suit in Illinois. *Id.* at 14. Third parties' activities, however, cannot supply the requisite contacts. *See Brantley*, 2024 WL 3673727, at *7 (rejecting as "too attenuated" argument that defendant paid third-party to scrape photos originally uploaded in Illinois because third party's contacts could not support jurisdiction); *Salkauskaite v. Sephora USA, Inc.*, 2020 WL 2796122, at *5 (N.D. Ill. May 30, 2020) (explaining that the "use of ModiFace's technology in the forum is at most a random, fortuitous, or attenuated contact"—and a contact resulting from "actions by Sephora, a codefendant, not by ModiFace itself" at that).

And the Supreme Court has foreclosed Plaintiff's contention that her own "use of the website or app of one of the 'millions' that have installed Google Analytics and Tag Manager," Opp. at 15, is sufficient to manufacture the requisite contacts. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"); *accord Brantley*, 2024 WL 3673727, at *7–8; *McGoveran*, 488 F. Supp. 3d at 722.

#### 4. Exercising Jurisdiction Over Google Would Not Comport with Traditional Notions of Fair Play and Substantial Justice.

Because Plaintiff has failed to identify any claim-related conduct that occurred in or was directed at Illinois or to plausibly allege facts showing that her injury "arises out of" Google's contacts with Illinois, exercising jurisdiction over Google would "offend 'traditional notions of fair play and substantial justice.'" *See N. Grain Mktg.*, 743 F.3d at 492.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiff seeks to use unjust enrichment as a vehicle for holding Google liable for Nebula's alleged GIPA violation. Given her deficient pleading, and her transparent evasion of GIPA's extraterritorial limits via a tag-along claim (a purpose she does not deny), dismissal is warranted.

### A. Plaintiff's Claim Against Google Cannot Rest on Nebula's Wrongful Conduct.

Acknowledging that she cannot maintain a standalone claim for unjust enrichment under Illinois law, Plaintiff argues that her claim can proceed against Google because it is tied to her GIPA claim against Nebula. *See* Opp. at 8–9. Her position is legally untenable. The Seventh Circuit has explained that an unjust-enrichment claim based on the same improper conduct at issue in another claim "will stand or fall with the related claim." *See Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). This is no doubt true where "this improper conduct" "form[s] the

basis of another claim *against the defendant*"—that is, another claim against *the same defendant*. *Id.* (emphasis added). But Google is aware of, and Plaintiff has identified, no authority that contemplates liability for unjust enrichment where the improper conduct at issue is alleged to have been committed by a third party against whom the "related claim" is asserted. Instead, the great weight of authority, and perhaps *all* the authority, concerns the situation where a claim for unjust enrichment tags along with a related claim that has been brought against the same defendant based on the same improper conduct. *E.g.*, *Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 852 (N.D. Ill. 2024); *Solar Micronics, Inc. v. Reddy*, 2023 WL 4564566, at *6 (N.D. Ill. July 17, 2023); *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741–42 (7th Cir. 2017); *Letoski v. Coca-Cola Co.*, 2024 WL 4476120, at *8 (N.D. Ill. Oct. 11, 2024); *Slowinski v. BlueTriton Brands, Inc.*, 744 F. Supp. 3d 867, 887–88 (N.D. Ill. 2024); *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324–25 (7th Cir. 2021); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019).

Plaintiff identifies *no* authority for the novel proposition that she can split the related, substantive claim and the unjust-enrichment claim between different defendants. Opp. at 8. The reason she has found no case to support her theory of unjust enrichment is manifest: it would be neither logical nor fair to hold one party liable for the misconduct of another. Were the law otherwise, a plaintiff could force a defendant to litigate an unjust-enrichment claim because a related, substantive claim against an entirely *different* party might be viable. Stated another way, tying the claims together here yields the extraordinary result that Plaintiff's claim against *Google*, which is a standalone claim that also fails on the merits, depends on the viability of her claim against *Nebula*. This cannot be the law, and unsurprisingly, courts have not countenanced this result. *See, e.g.*, *ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, 2013 WL 594298, at *1–2 (N.D. Cal.

Feb. 14, 2013) (dismissing unjust-enrichment claim where plaintiff alleged defendant benefited from fraudulent acts of codefendants but did not accuse defendant of misconduct).

Nor does Plaintiff dispute that she is using her unjust enrichment claim against Google to circumvent GIPA's extraterritorial limits. *See generally* Opp. at 8–9. Allowing Plaintiff to use Nebula's alleged violation of GIPA as the basis for her unjust-enrichment claim against Google would defeat the purpose of limits on extraterritoriality and frustrate the will of the legislature that enacted GIPA. *See* 410 ILCS 513/1, *et seq.*; *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852–53 (Ill. 2005) (explaining that Illinois statutes lack "extraterritorial effect unless a clear intent in this respect appears from the provision of the statute").

### B. Plaintiff Fails to State a Claim for Unjust Enrichment Under *HPI*.

Regardless, Plaintiff's Opposition makes clear that she cannot allege essential elements of her claim. Conceding that she must satisfy one of the three scenarios in *HPI Health Care*, she argues that two "bases are present here:" (1) mistake; and (2) a better claim. Opp. at 9; *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Beyond her failure to identify a single authority supporting her position, Plaintiff also identifies no facts in her Complaint resembling either scenario.

#### 1. Plaintiff's Claim for Unjust Enrichment Based on Mistake Fails.

Accusing Google of misconstruing her Complaint, Plaintiff argues that she "is not alleging that Google's advertisers should have paid her" but instead is claiming "that the benefit conferred on the Moving Defendants by Plaintiff (through Nebula) is her private genetic information." Opp. at 9. Beyond the fact that the word "mistake" appears nowhere in her Complaint, Plaintiff's theory is fundamentally flawed. First, the benefit cannot spring from Plaintiff herself but must come from a third party. *See Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 852 (N.D. Ill. 2024)

(explaining that, in a case of mistake, plaintiff must allege that "the benefit should have been given to the plaintiff, but the *third party* mistakenly gave it to the defendant instead") (emphasis added). For this reason, the classic case of mistake involves a third party's mistaken payment to one person instead of another. *See, e.g.*, *Hamilton Glass Co. v. Shaffer*, 139 N.E.2d 799, 800 (Ill. 1957).

Second, Plaintiff seeks to recover an entirely different benefit—Google's advertising revenue (Compl. ¶ 134)—from the one she allegedly conferred—"her private genetic information." Opp. at 9. She alleges no facts that could satisfy her burden of showing that she—"rather than [Google]—is entitled to" Google's advertising revenue. *Hollinger Int'l, Inc. v. Hollinger, Inc.*, 2006 WL 3827326, at *3 (N.D. Ill. Dec. 27, 2006). Nor does she identify any case in which a court has ordered restoration of a completely different benefit—revenue—based on a third party's mistaken sharing of information with the defendant. *See* Opp. at 9–10. Courts have declined similar invitations to order disgorgement of a defendant's profits based on a mistake theory because plaintiffs could not plausibly allege their entitlement to such profits. For example, in *Village of Rockton v. Sonoco Products Co.*, the plaintiff sought disgorgement of the defendant's profits from use of a papermill. 135 F. Supp. 3d 700, 711 (N.D. Ill. 2015). Rejecting the plaintiff's claim based on a mistake theory, the court explained that "there is no basis to believe that Sonoco's monetary profits should have been given to Rockton." *Id.*; *see also Bovay v. Sears, Roebuck & Co.*, 2017 WL 660595, at *15 (Ill. App. Ct. Jan. 6, 2017) (complaint did not allege "any mistaken payments" from third-party advertisers to Sears instead of plaintiffs).

**2. Plaintiff Lacks a Better Claim to the Value of Her Data.**

Nor does Plaintiff have a "better claim" to the benefit than Google under the third scenario in *HPI*. *See HPI*, 545 N.E.2d at 679. Preliminarily, Plaintiff equivocates on the benefit she contends is at issue. Throughout her Opposition, she variously identifies the "benefit" as the

"genetic information" itself (*see* Opp. at 9, 11); the "value of her genetic information" (*id.* at 9); and the "value in [the genetic information] being protected, and in not being used for monetization purposes" (*id.* at 11). But none of these is the benefit Plaintiff actually seeks to recover—Google's advertising profits—and nowhere does she claim any entitlement to such profits, which is fatal to her claim. Compl. ¶ 134; *Hollinger*, 2006 WL 3827326, at *3.

There are other flaws in her theory, too. First, Plaintiff's personal information lacks intrinsic value. *See* Mot. at 14–15; *Ramirez*, 729 F. Supp. 3d at 851–52 (concluding that plaintiffs' data, including addresses, social security numbers, and phone numbers, had minimal value); *Dwyer v. Am. Express Co.*, 652 N.E.2d 1351, 1356 (Ill. App. Ct. 1995) (dismissing privacy claim because credit-card holders' names had "little or no intrinsic value"); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) ("Courts have, however, routinely rejected the 'proposition that an individual's personal identifying information has an independent monetary value.'"); *Roper v. Rise Interactive Media & Analytics, LLC*, 2023 WL 7410641, at *6 (N.D. Ill. Nov. 9, 2023) (dismissing unjust-enrichment claim because plaintiffs' identifying information, including medical diagnoses, did not "confer a benefit on Defendant[] as that term is understood for purposes of unjust enrichment"). That the Illinois legislature has seen fit to protect genetic information from disclosure does not endow the information with monetary value. *See, e.g.*, *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 577–78 (N.D. Ill. Sept. 4, 2020) (HIPAA and MPRA do not create "property interest" in "health data" that would support standing). Plaintiff's Opposition entirely ignores this substantial, contrary authority.

Second, Plaintiff's implicit concession that she never intended to monetize her data and that Google has not deprived her of any value punctures her argument that she has a better claim to the value of that data. *See* Opp. at 11; *Remijas v. Neiman Marcus Grp.*, 794 F.3d 688, 695 (7th

Cir. 2015) (no standing to sue for loss of "property right" in "private information" absent allegation "that the plaintiffs could sell their personal information for value"); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 846 (N.D. Ill. 2023) (dismissing consumer fraud claim where plaintiff failed to allege that she "sought to monetize her own data" or "that her ability to do so was diminished by [defendant's] practices").

### C. Plaintiff Fails to Plead the Other Elements of Her Unjust-Enrichment Claim.

As to the remaining elements of her claim, Plaintiff's Opposition simply repeats speculation and legal conclusions from her Complaint. While reiterating her allegation that her genetic information "adds tremendous value" to advertisements Google sells and enables Google to "sell more ads for more money," she fails to explain *how* Google has profited from *her* data *specifically*. *See* Opp. at 12 (citing Compl. ¶ 131). This is fatal to her claim. *See Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *8 (N.D. Ill. Mar. 30, 2022). In *Hogan*, the court dismissed the plaintiffs' unjust-enrichment claim because they failed to "allege facts to show exactly how Amazon is profiting from Plaintiffs' images" and could not explain "how their specific images made Rekognition more valuable or profitable to Amazon." *Id.* So, too, here. Plaintiff responds that because of the Google User ID associated with her information, Google "has specifically compiled data on Plaintiff and Class Members which is unique to each of them, enabling Moving Defendants to market their targeted advertising to their customers." Opp. at 13. This does not overcome the issue identified in *Hogan*, as Plaintiff does not explain how her "information" specifically adds value for Google.

Her attempt to salvage her allegations supporting the element of detriment is feebler still. First, she claims that the "detriment" she suffered is the "disclosure of her most private information to large technology companies." Opp. at 12–13. Again, Plaintiff offers no authority for her position

that she can rely on *Nebula's* alleged violation of GIPA to show that she has suffered a detriment at *Google's* hands. Moreover, Illinois requires her to plead a "connection between the detriment and [Google's] retention of the benefit." *Cleary*, 656 F.3d at 519. Like the plaintiff in *Hogan*, she fails to connect the alleged detriment (Nebula's GIPA violation) with the alleged benefit (Google's advertising revenue), given that she fails to allege that "retention of [her] data specifically enriched [Google]." *Hogan*, 2022 WL 952763, at *8.

Second, Plaintiff cannot at once complain that she "believed that her genetic information would be kept private, and not disclosed to any third party," Opp. at 12, while at the same time implicitly conceding that she was on notice that such information might be disclosed. Nowhere in her Opposition does Plaintiff dispute that Nebula's Privacy Policy—to which she assented when she created her account—discloses that Nebula shares "User Data" with "marketing and analytics services," including Google. *See* RJN Exs. 2-A, 2-B; Ex. 3 at 7, 11; Ex. 4 at 4, 9. For the same reason that Plaintiff cannot avoid a contract by failing to read it, she should not be permitted to rely on her own failure to read the agreement she signed with Nebula to show that she has suffered a detriment. *See Lyons Lumber & Bldg. Ctr., Inc. v. 7722 N. Ashland, LLC*, 59 N.E.3d 830, 836 (Ill. App. Ct. 2016) ("A contract does not become voidable simply because one party drafted the document and the other party chose not to retain counsel or read the document before signing it.").

Finally, Plaintiff parrots, without more, her conclusory allegation that "it would be unjust" for Google to retain advertising profits it lawfully earned. Opp. at 12 (citing Compl. ¶ 132). But Plaintiff has neither alleged nor argued that she, rather than Google, is "entitled" or has a "better claim" to those profits. *See generally* Opp. at 9–13; Compl. There simply is nothing inequitable about Google's retention of advertising revenue that it earned, and the "mere fact" that Plaintiff allegedly has benefited Google "is not of itself sufficient to require [Google] to make restitution

therefor." *Saletech, LLC v. E. Balt, Inc.*, 20 N.E.3d 796, 808 (Ill. App. Ct. 2014) (quoting *Hayes Mech., Inc. v. First Indus. L.P.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004)). Indeed, she could not.

Plaintiff does not explain why it would be equitable for the Court to order *Google* to disgorge profits as punishment for *Nebula*'s alleged violation of GIPA. *Nebula* chose to install Google Analytics and Google Tag Manager; *Nebula* allegedly violated GIPA by collecting and sharing genetic information with Google despite Google's policies expressly forbidding website owners from sending it such information. *See* Compl. ¶¶ 87–91; Lam Decl. ¶¶ 11–12; RJN, Ex. 1. Plaintiff cannot hold Google responsible for Nebula's actions. *See generally* Compl.; *Aiello v. Invision Mktg. Sols.*, 2019 WL 1875354, at *2 (N.D. Ill. Apr. 26, 2019) (rejecting argument that defendant was liable for unjust enrichment when third party was responsible for plaintiffs' injury); *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1234 (N.D. Ill. 2005) (dismissing unjust-enrichment claim where plaintiff failed to allege entitlement to advertising fees defendant received). Under the circumstances, it would be  unfair to force Google to pay the penalty of its customer's allegedly unlawful disclosure. *See Brinley Holdings, Inc. v. Husch Blackwell LLP*, 2022 WL 80271, at *7 (N.D. Ill. Jan. 7, 2022) ("Unjust enrichment is not a mode of imposing punitive damages; it is a means of recovering something that the defendant is not entitled to but is unfairly possessing to the plaintiff's detriment.") (quoting *Cleary*, 656 F.3d at 520).

## CONCLUSION

For the reasons set forth above, the Complaint is facially deficient and should be dismissed.

Dated: March 6, 2025

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Debra Bogo-Ernst*

Debra Bogo-Ernst (IL Bar No. 6271962)
DErnst@willkie.com

WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, IL 60654-3406
Telephone: (312) 728-9062
Facsimile: (312) 728-9199

Benedict Y. Hur *(pro hac vice)*
Simona A. Agnolucci *(pro hac vice)*
Eduardo E. Santacana *(pro hac vice)*
David D. Doak *(pro hac vice)*
WILLKIE FARR & GALLAGHER LLP
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

*Attorneys for Defendant*
*Google LLC*

## CERTIFICATE OF SERVICE

I, Debra Bogo-Ernst, hereby certify that on March 6, 2025, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which provides service to all counsel of record.

Dated: March 6, 2025

/s/ *Debra Bogo-Ernst*

Debra Bogo-Ernst (IL Bar No. 6271962)
DErnst@willkie.com
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, IL 60654-3406
Telephone: (312) 728-9062
Facsimile: (312) 728-9199

*Counsel for Defendant Google LLC*